601 P.2d 144 (1979)
Aldwyth FOIL, Plaintiff and Appellant,
v.
Dr. Carter BALLINGER, Defendant and Respondent.
No. 16071.
Supreme Court of Utah.
September 19, 1979.
*145 John Spencer Snow, Reading & Snow, Salt Lake City, for plaintiff and appellant.
Ramon M. Child, Richard F. Bojanowski, Ross C. Anderson of Berman & Giaque, Salt Lake City, for defendant and respondent.
STEWART, Justice:
Plaintiff brings this appeal from a summary judgment in favor of defendant dismissing with prejudice plaintiff's malpractice action on the ground it was barred by the statute of limitations contained in the Utah Health Care Malpractice Act, § 78-14-4 U.C.A.[1] The primary issues on appeal are: (1) whether the statute of limitations commences to run from the date of injury or from the date an injured person knows or should know that a known injury was caused by what is alleged to be a negligent act; and (2) whether the tolling provision found in § 78-12-40 extends the time for filing a suit notwithstanding a failure to file a notice of intent to sue within the limitations period.
Plaintiff sustained a back injury in May 1967. Her ailment was diagnosed and treated with good results, allowing her to remain gainfully employed until December 1971 when she again injured her back while working for the Utah State Liquor Commission. A surgeon extended a spinal fusion performed previously and excised two disc herniations and a dislodged bone graft which had partially compressed a nerve root. A rhizotomy was necessitated by the remaining immobilization and partial atrophy of the nerve root. As a result of this injury plaintiff submitted a claim to the Utah State Industrial Commission December 22, 1971.
Because of continued severe back pain, plaintiff sought relief at the University of Utah Pain Clinic where she was treated by the defendant from November 30 to December 15, 1973. Intermittent injections of *146 caudal anesthesia brought transient relief. She was also given various medications and subcutaneous electrical stimulation. Plaintiff was re-admitted to the University Medical Center and remained there from January 18 to February 22, 1974. The treatment which plaintiff alleges as the basis of her cause of action in this case was the administration of a permanent subarachnoid phenol block (hereafter the "block") on January 18, 1974. Defendant did not treat her again after her discharge.
Following administration of the block, plaintiff suffered from rectal and bladder problems and, in an effort to remedy those problems, underwent a total colectomy and ileoproctostomy and other surgical procedures in December 1975. Still, her health problems persisted. A medical panel, convened pursuant to the Workmen's Compensation Act, issued a written report concerning plaintiff's medical condition to the State Industrial Commission June 23, 1977. The report indicated that both the rectal and the bladder problems of the plaintiff had been caused primarily by the causative agents of the block administered January 18, 1974. In her complaint plaintiff alleges that this medical panel report provided her the first opportunity to discover the cause of her continuing disabilities.
On January 10, 1978, just a few days short of the end of the running of the statute of limitations, plaintiff filed a complaint against defendants Dr. Ballinger and the University of Utah Medical Center alleging negligence against both. On February 10, 1978, the action against the Medical Center was dismissed with prejudice for failure to comply with the notice requirement of the Utah Governmental Immunity Act, § 63-30-12, and for failure to file the action within the time required by the Act. No appeal has been filed from that order. The trial court also dismissed without prejudice the action against Dr. Ballinger for failure to comply with § 78-14-8 of the Utah Health Care Malpractice Act, which requires that written notice be sent to a health care provider at least 90 days before one undertakes to "commence an action." That Section, as it read at the time the trial court ruled in this matter, provided:
No malpractice action against a health care provider may be commenced unless and until the plaintiff gives the prospective defendant or his executor or successor, at least ninety days' prior notice of intent to commence an action. Such notice shall include the nature of the claim, the persons involved, the date, time and place of the occurrence, the circumstances thereof, specific allegations of misconduct on the part of the prospective defendant, the nature of the alleged injuries and other damages sustained. Notice may be in letter or affidavit form executed by the plaintiff and his attorney. Service shall be accomplished by persons authorized and in the manner prescribed by the Utah Rules of Civil Procedure for the service of the summons and complaint in a civil action. Such notice shall be served within the time allowed for commencing a malpractice action against a health care provider. If the notice is served less than ninety days prior to the expiration of the applicable time period, the time for commencing the malpractice action against the health care provider shall be extended to ninety days from the date of service of notice.
On March 17, 1978, more than four years after the administration of the block, a notice of intent was served for the first time on defendant, and on June 26, 1978, plaintiff filed a new action against defendant. On a motion for summary judgment, the trial court ruled that the statute of limitations of the Utah Health Care Malpractice Act, § 78-14-4, barred the action. That Section provides:
(1) No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence... .
The Utah Health Care Malpractice Act was passed by the 1976 Legislature and *147 became effective April 1, 1976. Subsection 2 of § 78-14-4 specifically makes the statute of limitations provision retroactive.[2] It does not, however, refer to the provision found in § 78-14-8 which requires that a notice of intent to sue be filed prior to commencement of an action.
The first issue to be addressed is whether the action filed January 10, 1978, was filed within the time limit prescribed by § 78-14-4. The dates critical to this determination are:

January 18, 1974 Administration of the permanent subarachnoid block.
April 1, 1976 Effective date of the Utah Health Care Malpractice Act.
June 23, 1977 Issuance of medical panel report indicating the cause of
 plaintiff's ailments.
January 10, 1978 Action filed without notice of intent to sue.
June 26, 1978 Second action filed after serving notice of intent to
 sue.

Defendant argues that the action filed January 10, 1978, was not timely because plaintiff knew of her injury at or shortly after the administration of the subarachnoid block. If that date controls, plaintiff's action clearly was filed more than two years later and was properly dismissed. Plaintiff contends that the critical date in this case for the purpose of determining when the limitations period commenced to run was the date she first became aware of the causal relationship between her physical disabilities and the alleged negligent act  i.e., the date of the issuance of the medical panel report. If that position is correct, plaintiff filed her action within two years of the discovery of her legal injury and within the maximum four-year period allowed by the statute. For the purpose of this appeal we are obliged to accept as true plaintiff's allegation as to the time of her first knowledge of the relationship between the block and her disabilities.
In determining the proper construction to be placed upon § 78-14-4, it is important to keep in focus the proposition that that section deals only with malpractice actions against health care providers; it is not a general statute of limitation on personal injury actions as such.
Because of the nature of malpractice actions, and based on prior Utah law, we hold that the statute begins to run when an injured person knows or should know that he has suffered a legal injury. We base this holding on several grounds. In the health care field it is typically the case that there often is a great disparity in the knowledge of those who provide health care services and those who receive the services with respect to expected and unexpected side effects of a given procedure, as well as the nature, degree, and extent of expected after effects. While the recipient may be aware of a disability or dysfunction, there may be, to the untutored understanding of the average layman, no apparent connection between the treatment provided by a physician and the injury suffered. Even if there is, it may be passed off as an unavoidable side effect or a side effect that will pass with time. Indeed, common experience teaches that one often suffers pain and other physical difficulties without knowing or suspecting the true cause, and may, as often happens, ascribe a totally erroneous cause to the manifestations. Even those who are trained in medical science often require the additional expertise of one possessing specialty training to diagnose properly the cause of certain ailments. A number of medical difficulties can readily be attributed by a layman to causes that are known or should be known. But when injuries are suffered that have been caused by an unknown act of negligence by an expert, the law ought not to be construed to destroy a right of action before a person even becomes aware of the existence of that right.
*148 Furthermore, to adopt a construction of § 78-14-4 that encourages a person who experiences an injury, dysfunction or ailment, and has no knowledge of its cause, to file a lawsuit against a health care provider to prevent a statute of limitations from running is not consistent with the unarguably sound proposition that unfounded claims should be strongly discouraged. One of the chief purposes of the Utah Health Care Malpractice Act was to prevent the filing of unjustified lawsuits against health care providers, with all the attendant costs, economic and otherwise, that such suits entail.
It would also be imprudent to adopt a rule that might tempt some health care providers to fail to advise patients of mistakes that have been made and even to make efforts to suppress knowledge of such mistakes in the hope that the running of the statute of limitations would make a valid cause of action nonactionable. A rule that provides that the limitations period shall run from the date of the act or omission tends to foster that result. The law should foster a fulfillment of the duty to disclose so that proper remedial measures can be taken and damage ameliorated.
These reasons militate in favor of construing the term "injury" in § 78-14-4 to mean legal injury. That is, they favor the view that the two-year provision does not commence to run until the injured person knew or should have known that he had sustained an injury and that the injury was caused by negligent action.
This conclusion is supported by this Court's decision in Christiansen v. Rees, 20 Utah 2d 199, 436 P.2d 435 (1968). In Christiansen the issue was whether the plaintiff could maintain an action for injuries suffered due to alleged negligence in leaving a broken surgical needle in the plaintiff. The action was filed some ten years after the operation. The applicable statute of limitations was four years. The plaintiff argued that the statute did not commence to run until the plaintiff discovered or should have discovered the existence of the foreign object. This Court held, overruling a previous case, that if the patient was ignorant of "his right of action for malpractice," the cause of action did not accrue at the date of the alleged negligence, but rather at the date he learned of the foreign object in his body, 20 Utah 2d at 201, 436 P.2d at 436.
In the instant case the plaintiff alleges she did not know of her right of action for malpractice until she was apprised of the cause of her injuries by the medical panel report. We see no basis for making a legal distinction between having no knowledge of an injury, as was the case in Christiansen, and no knowledge that a known injury was caused by unknown negligence. Accordingly, we hold that the term discovery of "injury" in § 78-14-4 means discovery of injury and the negligence which resulted in the injury.
Although there is not unanimity on the point, the rulings of a number of other state courts support this interpretation on reasoning with which we agree.[3] For example, in Hundley v. St. Francis Hospital, 161 Cal. App.2d 800, 327 P.2d 131, 135 (1958), the court stated that the California statute of limitations would not commence to run in the absence of actual discovery of the negligence, "and this is true even though the condition itself is known to the plaintiff, so long as its negligent cause and its deleterious effect is not discovered." Also, as was stated in Berry v. Branner, 245 Or. 307, 421 P.2d 996, 998 (1966):
To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent *149 and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, "You had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy," makes a mockery of the law. [Citation omitted.]
Since the Utah statute requires a malpractice action to be brought within a maximum of four years from the negligent treatment, health care providers are adequately shielded from claims against which it may be difficult to defend because of the lapse of time. Interpreting the term "injury" to mean legal injury, therefore, does not undermine the purpose of the limitation statute. Another safeguard against tardy claims is the requirement that a person exercise "reasonable diligence" in determining the nature and cause of his or her injury.
Accordingly, we hold that if plaintiff's allegations with respect to her knowledge of her right of action are true, that her first complaint was filed within the time limitations imposed by § 78-14-4.
The next question to be addressed is whether the action, which was originally filed without serving a notice of intent to sue as required by § 78-14-8, could be refiled after the filing of such a notice but after the running of the four-year limitations period. Plaintiff contends that the four-year period was extended by the operation of § 78-12-40. That section provides:
Effect of failure of action not on merits.  If any action is commenced within due time and a judgment thereon for the plaintiff is reversed, or if the plaintiff fails in such action or upon a cause of action otherwise than upon the merits, and the time limited either by law or contract for commencing the same shall have expired, the plaintiff, or if he dies and the cause of action survives, his representatives, may commence a new action within one year after the reversal or failure. [Emphasis added.]
Since plaintiff did not serve a notice of intent to commence action upon defendant within the four-year statute of limitations period, it is arguable that the first action was therefore not "commenced" within the meaning of § 78-12-40 and that its savings provision is not applicable. In this connection the defendant properly states that this Court in Vealey v. Clegg, Utah, 579 P.2d 919 (1978), held that the notice of intent to sue provision in § 78-14-8 was applicable to a claim for relief that arose prior to enactment of the Malpractice Act, but which was filed after its enactment.[4]
The contentions that the complaint filed January 10, 1978, was not sufficient to "commence" an action and that the dismissal was on the merits thereby precluding a refiling, are faulty.
Because the January 10, 1978, suit was dismissed without prejudice, the dismissal was not an adjudication on the merits. Union Interchange, Inc. v. Van Aalsburg, 102 Ariz. 461, 432 P.2d 589 (1967); see also Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). Plaintiff therefore had the right to refile the action within one year if the first action had been properly "commenced" as that term is used in § 78-12-40. Resolution of this issue requires an interpretation of § 78-14-8 of the Utah Health Care Malpractice Act, supra, 146.
First, the language of the notice of intent to sue provision, § 78-14-8, does not purport to define when an action is "commenced." It states that an action may not "be commenced" unless a notice of intent to sue has been given the prospective defendant. Rule 3 of the Utah Rules of Civil Procedure expressly specifies how an action is commenced. That rule states: "[a] civil *150 action is commenced (1) by filing a complaint with the court, or (2) by the service of a summons."
The complaint filed January 10, 1978, therefore, had the effect of "commencing" the action. The subsequent dismissal of the January 10, 1978, action without prejudice was not a decision on the merits. Section 78-14-8 merely prescribes a condition precedent to the filing of a summons or a complaint. A failure to comply with such conditions does not constitute an adjudication on the merits, but is merely a procedural defect that does not relate to the merits of the basic action in any way. There are numerous instances in which the law requires fulfillment of a condition precedent before the filing of a complaint, and failure to comply with the condition may result in a dismissal, but not on the merits. Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Durham v. Mason and Dixon Lines, Inc., 404 F.2d 864 (6th Cir.1968); Saylor v. Lindsley, 391 F.2d 965 (2nd Cir.1968). The condition in this case falls within the scope of this rule. Moreover, since this condition may be waived by a defendant, it can hardly be contended that, assuming a waiver, no action had been "commenced" if a summons and complaint had been filed.
In addition, the Legislature in 1979 amended the notice of intent provision to clarify its original intent as to the effect to be given that provision. In so doing, the Legislature settled two points salient to this appeal. First, the notice of intent provision was made inapplicable to causes of action arising before the enactment of the Malpractice Act in 1976, and second, a notice of intent to sue was not necessary to "commence an action."
This amendment originated as House Bill 164. The amendment specifically states that the notice provision is not to be held retroactive to causes of action arising prior to the 1976 Act. The amendment also changed the word "commenced" to "initiated" to make clear that the usual rule for determining when an action is commenced should apply. As amended, that provision reads:[5]
78-14-8. No malpractice action against a health care provider may be initiated unless and until the plaintiff gives the prospective defendant or his executor or successor, at least ninety days' prior notice of intent to commence an action... .
This section shall, for purposes of determining its retroactivity, not be construed as relating to the limitation on the time for commencing any action, and shall apply only to causes of action arising on or after April 1, 1976. This section shall not apply to third party actions, counterclaims or crossclaims against a health care provider. [Emphasis added.]
The presentation of the amendment to the 1979 Legislature for its vote was illuminating as to its purpose. We have reviewed the statements made on the floor of the House and Senate to determine the legislative intent, and we find it indisputable that the Legislature intended to overrule Vealey.[6] Representative Bangerter, a co-sponsor of the original act as well as of the amendment, stated in the House of Representatives that a problem as to effectuation of legislative intent with respect to the 1976 Act had become apparent following an interpretation of the Malpractice Act by the courts. He noted that this Court had applied the notice requirement retroactively and that the amendment was presented for the purpose of overturning that decision and making it clear that § 78-14-8 is applicable only to causes of action arising after April 1, 1976. He further indicated that a number of cases currently pending before the courts would end in unjust results if the amendment were not passed. No representative expressed a contrary view, and the vote was unanimous for passage of the *151 bill. When the bill was presented to the Senate, Senator Renstrom pointed out that the Malpractice Act was intended to require notice only with respect to causes of action arising after the Act's effective date, and that the amendment was introduced to correct a problem that had been created. No contrary view was expressed, and passage was by a unanimous vote.
Defendant contends that a legislative enactment cannot be applied retroactively without violating due process of law. The argument is that the amendment to § 78-14-8 cannot be applied retroactively to this case. The defendant's argument is far too broad and is not valid as a general proposition.
The amendment to § 78-14-8 was made to establish the Legislature's intent that a notice of intent to sue was not the operative fact in the commencement of an action and that the notice was not applicable to causes of action arising prior to enactment of the Malpractice Act. In part, at least, the amendment was in response to this Court's holding in Vealey. Changes made in § 78-14-8 are strictly and purely remedial in nature. They do not serve to create or eliminate any vested interests or causes of action. They simply govern technical provisions for the bringing of a malpractice action.
This Court in an early case, Boucofski v. Jacobsen, 36 Utah 165, 104 P. 117 (1909), held that a newly enacted statute which deals only with procedural matters applies to accrued, pending, and future actions. In this regard, the Court, relying upon § 3490, Compiled Laws 1907, held that an action is pending "from the time of its commencement until its final determination upon appeal ..." (36 Utah at 172, 104 P. at 120). The principle was followed in Petty v. Clark, 113 Utah 205, 192 P.2d 589 (1948), and applies with particular force to a remedial statute passed to clarify an earlier procedural enactment. Particularly in point is this Court's language in Okland Construction Co. v. Industrial Commission, 520 P.2d 208, 210, 211 (Utah 1974):
It is true, as the employer Okland contends: that it is entitled to have its rights determined on the basis of the law as it existed at the time of the occurrence; and that a later statute or amendment should not be applied in a retroactive manner to deprive a party or his rights or impose greater liability upon him. But this principle has no application where the later statute or amendment deals only with clarification or amplification as to how the law should have been understood prior to its enactment. [Footnote omitted.]
We recognize the potential mischief, indeed, the grave constitutional problems, that could arise if the Legislature were to attempt to determine the outcome of a particular case by passage of a law intended to accomplish such a purpose. There is, however, no such difficulty here. The Legislature in this case has merely acted to effectuate its original intent with respect to the notice of intent to sue provision.
We hold, therefore, that the 1979 amendment to § 78-14-8 was retroactive effect and specifically that the notice of intent to sue provision is not applicable to causes of action arising before enactment of the Malpractice Act and does not determine when an action is "commenced."
Finally, the defendant contends that the complaint filed January 10, 1978, is different from the complaint filed June 26, 1978. The changes insofar as they add to the original complaint are basically additional specifications of alleged malpractice and arise out of the same basic operative facts set forth in the first complaint. The tolling statute requires only that the claim or claims for relief stated in the second action arise out of the transaction or occurrence on which the claim or claims in the first action were founded. See Williams v. Nelson, 45 Utah 255, 145 P. 39 (1914).
Because the timeliness of the action filed in this case depends upon an evaluation of the facts which must be undertaken by the trial court, we reverse and remand for a determination as to when the plaintiff knew or should have known of the alleged negligence giving rise to her injuries.
*152 Reversed and remanded. Costs to Appellant.
CROCKETT, C.J., and MAUGHAN and HALL, JJ., concur.
WILKINS, J., does not participate herein.
NOTES
[1] All statutory references are to Utah Code Annotated (1953), as amended.
[2] Subsection 2 of § 78-14-4 provides in part:

The provisions of this section shall apply ... retroactively to all persons, partnerships, associations and corporations and to all health care providers and to all malpractice actions against health care providers based upon alleged personal injuries which occurred prior to the effective date of this act... .
[3] See also Mayer v. Good Samaritan Hospital, 14 Ariz. App. 248, 482 P.2d 497 (1971); Davis v. Bonebrake, 135 Colo. 506, 313 P.2d 982 (1957); Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959); Johnson v. Caldwell, 371 Mich. 368, 123 N.W.2d 785 (1963); and Yerkes v. Rockwood Clinic, 11 Wash. App. 936, 527 P.2d 689 (1974). This rule has also been applied by a federal court in a Federal Tort Claims Act case, Jordan v. United States, 503 F.2d 620 (6th Cir.1974).
[4] It is clear from the Act that the statute of limitations provision is to be applied retroactively. Section 78-14-11 of the 1976 Act states:

Act not retroactive  Exception.  The provisions of this act, with the exception of the provisions relating to the limitation on the time for commencing an action, shall not apply to injuries, death or services rendered which occurred prior to the effective date of this act. [Emphasis added.]
[5] The amendment also modified certain requirements of the notice provision not relevant here.
[6] Recordings of the proceedings of the 43rd Legislature, presentation of H.B. 164; House of Representatives, February 13, 1979, No. 7; Senate, March 7, 1979, No. 325.