**John J. MAGOC, Plaintiff-Appellant,**

v.

**Keith R. HOOKER and Intermountain Health Care, Inc., a Utah corporation d/b/a Utah Valley Hospital, Defendants-Appellees.**

No. 84–1219.

United States Court of Appeals, Tenth Circuit.

July 23, 1986.

Danielle Eyer Davis (Craig M. Snyder of Howard, Lewis & Petersen, with her on brief), Provo, Utah, for plaintiff-appellant.

David W. Slagle of Snow, Christensen & Martineau, Salt Lake City, Utah, for Keith R. Hooker, defendant-appellee.

Charles W. Dahlquist, II of Kirton, McConkie & Bushnell, Salt Lake City, Utah, for Intermountain Health Care, Inc., defendant-appellee.

Before McKAY and McWILLIAMS, Circuit Judges, and BALDOCK, District Judge.*

McWILLIAMS, Circuit Judge.

This is a medical malpractice suit brought in the United States District Court for the District of Utah. Jurisdiction is based on diversity of citizenship. The case turns on the Utah Health Care Malpractice Act, Utah Code Ann. (U.C.A.) § 78–14–1, *et seq.* The district court held that the plaintiff's cause of action was time-barred by the two-year statute of limitations provided for in U.C.A. § 78–14–4(1) and granted motions to dismiss and for summary judgment filed by the two defendants. Plaintiff now appeals the dismissal of his action with prejudice. We affirm.

John J. Magoc, a resident of Santa Ana, California, while traveling through the State of Utah, had occasion on April 29, 1981, to consult professionally with Dr. Keith R. Hooker concerning Magoc's red and swollen left foot. According to the complaint, Dr. Hooker, either as an employee or as an independent contractor, was at the time working for the Utah Valley Hospital in its emergency room. Magoc's cause of action is based on Dr. Hooker's treatment of him on April 29, 1981. Dr. Hooker, according to Magoc, negligently treated him on that occasion, which was his one and only contact with Dr. Hooker. Specifically, Magoc claims that Dr. Hooker dressed the swollen foot, prescribed certain drugs, instructed Magoc to stay off the foot for four or five days, soak it in warm water, and if it was not better within five days to consult another doctor upon his return to his home in California. We also learn that upon his return to California, Magoc did consult a California physician on May 4, 1981, where eventually a diabetic condition was discovered, and that he thereafter had some five operations on his left foot resulting in the amputation of a part of the foot. The gravamen of Magoc's complaint was that on April 29, 1981, Dr. Hooker made a negligent and careless diagnosis of Magoc's foot.

Dr. Hooker and the hospital filed a motion for summary judgment and a motion to dismiss respectively, and both raised the Utah two-year statute of limitations provided for in U.C.A. § 78–14–4(1).

Attached to one of the memoranda filed in connection with these motions was a letter, dated June 30, 1981, from John A. Hopwood, an attorney at law in Newport Beach, California, who was representing Magoc. That letter was addressed to, and received by, Dr. Hooker, on behalf of himself and the hospital. In that letter, Magoc's California counsel advised Dr. Hooker and the hospital that Magoc had a claim against Dr. Hooker and the hospital for malpractice in connection with Dr. Hooker's treatment of Magoc's foot on April 29, 1981. The letter described the diagnosis made by Dr. Hooker and the treatment he prescribed, which has been set out above, and then related the subsequent diagnosis and treatment received on Magoc's return to California. Reference was specifically made to a diabetic condition which was *not* discovered in Utah, and the letter concluded with a request that both Dr. Hooker and the hospital report the matter to their insurance carriers.

As stated, the underlying facts which formed the basis for the present claim occurred on April 29, 1981, when Dr. Hooker examined and treated Magoc in the emergency room at Utah Valley Hospital in Provo, Utah. On June 30, 1981, Magoc's California counsel advised Hooker and the hospital, in writing, that Magoc was asserting a medical malpractice claim against both Dr. Hooker and the hospital based on the events occurring on April 29, 1981.

* Honorable Bobby R. Baldock, United States District Judge for the District of New Mexico, sitting by designation.

The complaint in the instant case was filed on September 12, 1983. Based on these undisputed facts, the defendants argue that the present complaint was filed beyond the two-year statute of limitations provided for in U.C.A. § 78–14–4(1), and that such being the case the district court was correct in dismissing the cause of action with prejudice.

As to whether the district court was correct in holding that the present action was filed beyond the two-year statute of limitations, the defendants argue that the statute began to run no later than June 30, 1981, the date when Magoc's California counsel advised the defendants by letter of Magoc's claim against them for medical malpractice. Magoc's present counsel in this Court counters that argument by asserting that the statute did *not* begin to run with the June 30, 1981, letter from California counsel, and that it only began to run sometime later at a time which would bring the action within the two-year period. In this regard, plaintiff's counsel argues that although Magoc and his California counsel had reason to believe as early as June 30, 1981, that the defendants were guilty of medical malpractice, they did not, as of that date, know the *full extent* of defendants' negligence, which was only learned later. The district court rejected his argument, as do we. To adopt such reasoning would, in practical effect, wipe out the statute.

 In holding that the Utah two-year statute began to run on June 30, 1981, the date of the letter, the district court relied on *Foil v. Ballinger*, 601 P.2d 144 (Utah 1979). In *Foil*, the Utah Supreme Court held that the statute of limitations with which we are here concerned "begins to run when an injured person knows or should know that he has suffered a legal injury." *Id.* at 147. That court went on to state that the term "legal injury" means that "the injured person knew or should have known that he had sustained an injury

and that the injury was caused by negligent action." Certainly Magoc and his California counsel by the letter of June 30, 1981, knew that Magoc had sustained an injury which they believed was caused by the defendants' negligent action on April 29, 1981. The district court did not err in holding that the statute began to run on June 30, 1981.** *See* also *Hove v. McMaster*, 621 P.2d 694 (Utah 1980).

Alternatively, plaintiff argues here, as in the trial court, that the statute of limitations provided for in U.C.A. § 78–14–4(1) violates Article VI, Section 26 of the Utah State Constitution concerning "special legislation" and Article I, Section 24, also of the Utah State Constitution, guaranteeing equal protection. *Allen v. Intermountain Health Care, Inc.*, 635 P.2d 30 (Utah 1981), rejects this precise argument. Counsel admits such, but suggests that if the same question were presented again to the Utah Supreme Court, a different result would obtain. We decline to follow this will-of-the-wisp.

Additional issues raised on appeal, though not in the court below and not treated by the district court, are whether the notice provision of § 78–14–8 violates the equal protection guarantee of the Utah Constitution and whether the four-year statute of repose in § 78–14–4 violates Article I, Section 11 of the Utah Constitution. We decline to address these issues, which were not argued or considered in the court below. *Kenai Oil & Gas, Inc. v. Dept. of Interior*, 671 F.2d 383 (10th Cir.1982).

In sum, in this diversity case, the federal district judge neither misunderstood nor misapplied Utah law.

Judgment affirmed.

---

** U.C.A. § 78–14–8 provides that if a plaintiff serves a notice of intent to commence an action "less than ninety days prior to the expiration of the applicable time period, the time for commencing the malpractice action [is] extended to 120 days from the date of service of notice." Though Magoc did file such a notice of intent on April 28, 1983, and thus extended his deadline to August 26, 1983, his filing of the complaint on September 12, 1983, was still barred.