Charles **FLOYD**, Plaintiff and Appellant,

v.

**WESTERN SURGICAL ASSOCIATES, INC.**, Martin C. Lindem, Jr., M.D., Lynn L. Wilcox, M.D., and St. Mark's Hospital, Defendants and Respondents.

No. 880243–CA.

Court of Appeals of Utah.

April 28, 1989.

D. Clayton Fairbourn (argued), Fairbourn & Peshell, Midvale, for plaintiff and appellant.

Elliott J. Williams, Larry R. Laycock, Snow, Christensen & Martineau, Salt Lake City, for Western Surgical Associates, Inc. and Martin C. Lindem.

J. Anthony Eyre (argued), Kipp & Christian, Salt Lake City, for Lynn L. Wilcox.

Gary D. Stott, Richards, Brandt, Miller & Nelson, Salt Lake City, for St. Mark's Hosp.

Before GARFF, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Charles Floyd brought this action seeking damages against defendants resulting from allegedly unnecessary surgery. The trial court granted summary judgment for all defendants, stating that Floyd's claims were barred by the statute of limitations set forth in Utah Code Ann. § 78-14-4 (1987). The court stated that Floyd discovered, or through the exercise of reasonable diligence should have discovered, more than two years before he commenced the action, that he had sustained an injury and that the injury was caused by negligent action. We affirm.

After experiencing severe heartburn for many years and consulting at least two doctors about the problem, Floyd consulted Dr. Wilcox in November 1981. Dr. Wilcox examined Floyd, told him that he had a hiatal hernia and referred him to Dr. Lindem for surgery to correct the problem. Floyd met with Dr. Lindem and discussed possible hiatal hernia surgery only. Dr. Lindem told him the hernia was a tear between the esophagus and the stomach and the surgical process would entail pulling the stomach up over the esophagus and tying it in. Neither Dr. Lindem nor Dr. Wilcox told Floyd that he had ulcers. On December 8, Dr. Lindem's nurse asked Floyd to sign a consent form authorizing the surgery. According to Floyd, the consent form stated that the proposed medical treatment was hiatal hernia surgery only.

On December 9, 1981, Dr. Lindem conducted three surgical procedures on Floyd:

1) hiatal hernia surgery, also called fundoplication; 2) a vagotomy, which is severance of the stomach nerves to reduce stomach secretions and correct ulcer disease; and 3) pylorplasty, which enlarges the opening from the stomach to the duodenum to allow the contents of the stomach to empty more rapidly. At the time Floyd was discharged from the hospital, he told Dr. Lindem he had diarrhea and Dr. Lindem said that it would go away in time.

Over the next few months Floyd's diarrhea became worse, his stomach was upset almost continuously, he was depressed and began to lose weight. In about March or April 1982, Floyd's wife asked Dr. Lindem what he had done to Floyd. At that time, Dr. Lindem told Floyd and his wife that he had performed additional surgery. According to Floyd, Dr. Lindem stated that he had repaired the hernia, removed a portion of his stomach that was covered with ulcer scars, and cut the nerves in his stomach and opened up the bottom of his stomach so he could process food faster. Dr. Lindem also stated that it might take two or three years for Floyd to recover. During his deposition, Floyd testified that in March or April of 1982, he learned for the first time that Dr. Lindem had performed surgery he had never discussed with him and to which he had not consented. Floyd also stated that he understood at that time that the unconsented to surgery caused his diarrhea, upset stomach, weight loss and depression. Later in the deposition, however, Floyd indicated that he did not fully realize at that time that Dr. Lindem had done something that Floyd had not authorized.

In September 1982, Floyd consulted Dr. Wilcox regarding his ongoing diarrhea, upset stomach and depression. Floyd stated during his deposition, that he informed Dr. Wilcox at that time that Dr. Lindem had performed surgery in addition to fundoplication and that his problems were probably caused by the surgery. Dr. Wilcox confirmed that additional surgery was performed, ran tests on Floyd and determined that he had "dumping syndrome," a condition in which the stomach empties about ten minutes after eating instead of 77 min-

utes as with an average stomach. Dr. Wilcox told Floyd that dumping syndrome could be corrected through dietary changes coupled with medication or surgery.

In mid 1985, Floyd consulted another physician who stated that his diarrhea, upset stomach, depression and weight loss were due to unnecessary surgery unrelated to the hiatal hernia surgery. On November 27, 1985, Floyd filed a notice of claim informing defendants of his intent to bring this action. The complaint in this action was filed in March 1986. Floyd's deposition was taken on March 26, 1987. Defendants filed motions for summary judgment, claiming that the statute of limitations barred Floyd's claim because of Floyd's statements in his deposition concerning when he discovered Dr. Lindem had performed surgery in addition to that which Floyd had authorized. In response, Floyd filed an affidavit stating that he was led to believe that the problems he suffered were unavoidable side effects from the hiatal hernia surgery and that it was not until mid 1985 that he discovered that his upset stomach, diarrhea and dumping syndrome were results of the surgery that were not part of the procedure to correct his hiatal hernia. On July 20, 1987, the trial court granted summary judgment in favor of all defendants, stating,

> plaintiff discovered or through the exercise of reasonable diligence should have discovered that he had sustained an injury and that the injury was caused by negligent action more than two years before he commenced an action against the health care providers; consequently, his claims of medical malpractice are barred by the statute of limitations prescribed in ... Utah Code Ann. § 78–14–4.

On appeal, Floyd claims that there is a genuine issue of material fact regarding whether he knew or should have known more than two years before he commenced this action that he had sustained an injury and that the injury was caused by negligent action. Floyd asserts that his affidavit, dated June 23, 1987, establishes that he did not discover until mid 1985 that his symptoms were caused by the pylorplasty and vagotomy and that those procedures were not part of the hiatal hernia surgery.

■ "On appeal from a summary judgment, we view the evidence presented to the trial court in the light most favorable to the losing party." *Wheeler v. Mann*, 763 P.2d 758, 759 (Utah 1988). When ruling on a motion for summary judgment, a trial court may consider the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file. Utah R.Civ.P. 56(c); *Guardian State Bank v. Humpherys*, 762 P.2d 1084, 1087 (Utah 1988). Although the purpose of summary judgment is not to weigh the evidence, "when a party takes a clear position in a deposition, that is not modified on a cross-examination, he may not thereafter raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation of the discrepancy." *Guardian*, 762 P.2d at 1087 (quoting *Webster v. Sill*, 675 P.2d 1170, 1172–73 (Utah 1983)).

In this case, Floyd knew, at the latest, by September 1982, when he talked to Dr. Wilcox, that Dr. Lindem had performed additional surgical procedures and that his symptoms were caused by the additional surgery. In contrast, Floyd's affidavit states that Floyd was led to believe his problems were unavoidable side effects of the hiatal hernia surgery. Further, he claims it was not until mid 1985 that he discovered his symptoms resulted from surgery which was not part of the procedure to correct his hiatal hernia. Floyd has failed to provide an explanation for the discrepancy between his deposition testimony and the statements in the affidavit. Therefore, in accordance with *Guardian*, we disregard the affidavit.

■ We next consider whether, excluding consideration of the affidavit, the trial court erred in granting summary judgment for defendants. Utah Code Ann. § 78–14–4 (1987) states,

> No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should

have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence....

In *Foil v. Ballinger*, 601 P.2d 144, 147 (Utah 1979), the Utah Supreme Court stated that section 78-14-4 begins to run when an injured person knows or should know that he has suffered a legal injury and that the term discovery of "injury" in section 78-14-4 means discovery of injury and the negligence which resulted in the injury. *Id.* at 147-48. In *Foil*, plaintiff was admitted to the hospital in January 1974 and received, as part of her treatment, a permanent subarachnoid phenol block. Following the block, she suffered from rectal and bladder problems and underwent further surgery in an attempt to correct those problems. On June 23, 1977, after a workers' compensation panel issued a medical panel report stating that her disabilities were due to the block, plaintiff filed her complaint alleging that the medical panel report provided her the first opportunity to discover the cause of her disabilities. In holding that the trial court erred in dismissing her action because she filed her complaint more than four years after the statute of limitations ran, the court noted that when injuries are suffered that have been caused by an unknown act of negligence by an expert, the law ought not to be construed to destroy a right of action before a person even becomes aware of the existence of that right. *Id.* at 147.

In this case, unlike *Foil*, Floyd's deposition testimony establishes that Floyd was aware in September of 1982 that Dr. Lindem performed surgery in addition to the hiatal hernia surgery and that his symptoms were caused by the additional surgery. In contrast to *Foil*, Floyd had made the connection between the surgery and his symptoms, according to his clear deposition testimony. Therefore, by September 1982, at the latest, Floyd discovered or should have discovered the injury and that the additional surgical procedures caused his injury. Consequently, we find no error in the trial court's grant of summary judgment for defendants.

Floyd also asserts that the trial court erred in granting summary judgment because a question of fact exists regarding whether the health care providers attempted to conceal facts from Floyd and prevent him from discovering the injury and the alleged negligence which caused the injury.

Utah Code Ann. § 78-14-4(1)(b) (1987) provides:

In an action where it is alleged that a patient has been prevented from discovering misconduct on the part of the health care provider because the health care provider has affirmatively acted to fraudulently conceal the alleged misconduct, the claim shall be barred unless commenced within one year after the plaintiff or patient discovers, or through the use of reasonable diligence, should have discovered the fraudulent concealment, whichever occurs first.

 Floyd claims that a conflict exists between the above statute and Utah Code Ann. § 78-12-26(3) (1987), which provides for a three year statute of limitations in causes of action for fraud and mistake. Under general rules of statutory construction, where two statutes treat the same subject matter, and one statute is general while the other is specific, the specific provision controls. *State v. Burnham*, 87 Utah 445, 49 P.2d 963, 965 (1935); *see also State v. Hamblin*, 676 P.2d 376, 378 (Utah 1983); *Cannon v. Gardner*, 611 P.2d 1207, 1209 (Utah 1980). In this case, section 78-12-26(3) contains the general statute of limitations for fraud while section 78-14-4(1)(b) of the Utah Healthcare Malpractice Act specifically provides the statute of limitations for cases involving patients who have been prevented from discovering misconduct on the part of the health care provider. In accordance with general principles of statutory construction, the more specific statute, section 78-14-4(1)(b), controls.

Applying section 78-14-4(1)(b) to the facts in this case, we must again examine when Floyd discovered or should have discovered alleged misconduct on the part of the health care provider. As has previously been stated, Floyd's deposition indicates

that he discovered or should have discovered the alleged misconduct by September 1982, but his notice of intent to bring this action was not filed until November 1985. Therefore, we hold that his claim was barred by the one year statute of limitations set forth in section 78–14–4(1)(b). Accordingly, we find no error in the trial court's grant of summary judgment for defendants.

Finally, Floyd asserts that the special statute of limitations contained in the Utah Health Care Malpractice Act violates the equal protection clause of the United States and Utah Constitutions. However, Floyd failed to raise this issue in the trial court proceedings or preserve it on the record, and we decline to consider the issue for the first time on appeal. *James v. Preston*, 746 P.2d 799, 801 (Utah Ct.App. 1987).

GARFF and JACKSON, JJ., concur.