Michelle DESCHAMPS, personally, and as personal representative of the Estate of Theda E. Schulz, Plaintiff and Appellant,

v.

Lee PULLEY, M.D., and FHP of Utah d/b/a FHP Medical Center, Ogden, Defendants and Respondents.

No. 890409–CA.

Court of Appeals of Utah.

Dec. 13, 1989.

David E. West and David A. Reeve, Salt Lake City, for plaintiff and appellant.

Jesse C. Trentadue, Stewart M. Hanson, Jr. and Francis J. Carney, Salt Lake City, for defendants and respondents.

Before BENCH, BILLINGS, and GREENWOOD, JJ.

BILLINGS, Judge:

Appellant Michelle Deschamps ("Ms. Deschamps") filed a wrongful death and survival action alleging medical malpractice. The trial court granted defendant health care providers' motion for summary judgment concluding the action was barred under the medical malpractice statute of limitations, Utah Code Ann. § 78–14–4 (1987). We affirm.

Ms. Deschamps is the surviving daughter and personal representative of her deceased mother, Theda E. Schulz. Between June 29, 1984, and August 1, 1984, Dr. Pulley, a practicing physician employed by defendant FHP at its center in Ogden, Utah, treated Mrs. Schulz for shoulder and

chest pain. Dr. Pulley prescribed a regimen of drugs which Ms. Deschamps alleges induced a terminal disease known as vasculitis. As a result of this disease, Mrs. Schulz was hospitalized on August 1, 1984, where she remained until her death on October 30, 1984.

Prior to her death, Mrs. Schulz was unhappy with her medical progress and thus contacted an attorney, Mr. Hasenyager, to examine the facts surrounding her medical treatment. On September 20, 1984, Mrs. Schulz executed a medical release which instructed FHP to release her medical records to Mr. Hasenyager. Mr. Hasenyager reviewed Mrs. Schulz's medical records and the medical literature on vasculitis over the next few months. Before Mrs. Schulz's death in October 1984, Mr. Hasenyager obtained a discouraging report from the Department of Pharmacy at the University of Utah.

After her mother's death, Ms. Deschamps asked Mr. Hasenyager to continue his investigation and executed another release of medical records to accommodate his investigation into what she believed was the negligent treatment of her mother by respondent health care providers.

On December 31, 1984, Mr. Hasenyager filed a Notice of Intent to Commence an Action against Dr. Pulley and FHP as required by Utah Code Ann. § 78–14–8 (1987). The notice generally stated that: respondents had negligently failed to immediately withdraw Theda Schulz from all medications capable of causing vasculitis, which led to her death; respondents had failed to start her on the appropriate steroid therapy; and the estate of Theda Schulz intended to commence an action for medical malpractice against FHP and Dr. Pulley. Ms. Deschamps claims she was not aware of the filing of this notice.

Thereafter, Mr. Hasenyager sought the advice of a physician from the University of Pennsylvania School of Medicine. The doctor informed Mr. Hasenyager that his client did not have a cause of action for malpractice. Mr. Hasenyager informed Ms. Deschamps of the adverse expert opinion and closed his file.

Ms. Deschamps, however, continued to feel "uneasy" about the circumstances surrounding her mother's death and retained another attorney, Mr. Reeve, to continue the investigation.

In May 1986, Mr. Reeve received a report from another physician confirming his belief that FHP and Dr. Pulley had deviated from standard medical practice in the treatment of Mrs. Schulz, causing her premature death. Mr. Reeve, unaware of Mr. Hasenyager's activity, again filed a Notice of Intent to Commence Action on June 16, 1986.

On January 14, 1988, after Ms. Deschamps's claim was denied by a prelitigation panel, she filed the complaint in this action. The complaint was met by a motion for summary judgment claiming her action was time-barred under Utah Code Ann. § 78–14–4(1) (1987). The district court granted respondent health care providers' motion finding that Ms. Deschamps, as a matter of law, knew or reasonably should have known of her malpractice claim more than two years before she filed her complaint.

Ms. Deschamps brings this appeal alleging that she did not know or could not have reasonably known of health care providers' negligence until May 1986, when the third physician consulted confirmed that she had an actionable malpractice claim as a result of her mother's death. She therefore claims this action was filed within two years after she learned of health care providers' negligence and the trial court erred in granting summary judgment against her.

"In reviewing a summary judgment, this Court will view the facts in a light most favorable to the party opposing the motion and will allow the summary judgment to stand only if the movant is entitled to summary judgment as a matter of law on the undisputed facts." *Brower v. Brown*, 744 P.2d 1337, 1338 (Utah 1987) (citing *Barlow Soc'y. v. Commercial Sec. Bank*, 723 P.2d 398, 399 (Utah 1986)). *See also D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989). Thus, we review the evidence in a

light most favorable to Ms. Deschamps's position.

In this case, we are required to consider what the term "discovery of injury" means in Utah's medical malpractice statute of limitations. This statute provides, in pertinent part:

> No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence....

Utah Code Ann. § 78–14–4(1) (1987).[1]

The Utah Supreme Court in *Foil v. Ballinger*, 601 P.2d 144 (Utah 1979), considered what "discovery of injury" means in section 78–14–4. In *Foil*, the plaintiff did not learn of the defendant doctor's negligence until three-and-a-half years after it occurred, when an Industrial Commission medical panel identified the negligent treatment. *Id.* at 146. The court reversed the trial court's dismissal of plaintiff's action as untimely, stating:

> [W]hen injuries are suffered that have been caused by an unknown act of negligence by an expert, the law ought not to be construed to destroy a right of action before a person even becomes aware of the existence of that right.

*Id.* at 147. Citing concerns with the filing of unfounded claims and the temptation for health care providers to fail to advise patients of mistakes until after the limitations period has run, the court settled upon an interpretation of injury as it appears in section 78–14–4 to mean "legal injury." *Id.* at 148. The court held:

> [These reasons] favor the view that the two-year provision does not commence to run until the injured person knew or should have known that he had sustained an injury and that the injury was caused by negligent action.

*Id.*

Thus, under *Foil*, the statutory two-year limitations period does not commence to run until the injured person (1) knows or should know that she has sustained an injury, and (2) knows or should know that this injury was caused by negligence.

In this case, we focus on the second prong of the *Foil* legal injury test—knowledge of negligence. The narrow question presented is when did Ms. Deschamps know or should she have known that her mother's death was caused by medical negligence. Ms. Deschamps claims that she could not know of the legal injury under section 78–14–4 until she obtained a favorable expert opinion confirming her lay suspicion of negligence. Health care providers, on the other hand, argue that it is not "certainty" knowledge, but reasonable "inquiry" knowledge, which begins the running of the two-year statutory period.

In *Hove v. McMaster*, 621 P.2d 694 (Utah 1980), the Utah Supreme Court focused on knowledge of negligence under the *Foil* legal injury standard. In *Hove*, a dentist's injection of an anesthetic caused a nurse to suffer neurological complications. *Id.* at 695–96. She immediately and continually suffered discomfort and consulted several doctors about the problem. *Id.* at 695. However, no physician specifically attributed her ailments to the injection until three-and-a-half years later. *Id.* at 696. The trial court found her malpractice action against the dentist was barred by section 78–14–4. She appealed claiming, as Ms. Deschamps does in this case, that she first became aware of her legal injury only when a physician finally diagnosed that her problem was a result of the improper injection. The Utah Supreme Court upheld the trial court's ruling that dismissed her claim as untimely. *Id.* The court concluded that because of her immediate symptoms, her experience as a nurse with injections, and the fact she had reported the problem to several doctors, that "[p]laintiff could be expected to have recognized the possibility that the recurring discomforts were the result of the injection and that a proper

---

**1.** Section 78–14–3(12) (1989) defines a malpractice action to include actions for wrongful death and survival, and thus the limitation period provided in section 78–14–4 applies in this case.

injection would not have caused the alleged injury." *Id.* at 696. Thus, the supreme court in *Hove* rejected the position urged by Ms. Deschamps that she first became aware of her legal injury only when a physician connected her mother's death with legal negligence.

This court recently upheld the granting of summary judgment under section 78–14–4, finding that the plaintiff as a matter of law knew that his injuries were caused by medical malpractice more than two years before he filed his complaint. *Floyd v. Western Surgical Assocs., Inc.*, 773 P.2d 401, 405 (Utah Ct.App.1989). We rejected the plaintiff's argument that he did not know of his legal injury because he was led to believe his symptoms were unavoidable side effects of his treatment. *Id.* at 403. Again, this court previously has rejected the position urged by Ms. Deschamps that she did not know of her mother's legal injury because she was led to believe her mother's death was the result of unavoidable side effects.

Shortly after *Hove* was decided, the United States District Court for the District of Utah applied the *Foil* legal injury test in a case similar to the one before us. In *Hargett v. Limberg*, 598 F.Supp. 152 (D.Utah 1984), a physician, by his misdiagnosis of meningitis, allegedly caused serious permanent injury to an infant. The district court granted summary judgment for the physician finding the suit was time-barred under section 78–14–4(1). *Id.* at 155. In opposing the motion, the mother claimed the physicians she consulted led her to believe that her complaints were not legally actionable. *Id.* at 154. She thus claimed that she did not discover her legal injury until she consulted a lawyer. *Id.* The court stated her position confused "legal injury" with a legal conclusion of negligence.

Under *Foil*, and its progeny, a legal determination of negligence is not necessary to start the statute of limitations. Rather, the crucial question is whether

the plaintiff was aware of the *facts* that would lead a reasonable person to conclude that he may have a cause of action against the health care provider. Those facts include the existence of an injury, its cause and the possibility of negligence.

*Id.* at 155 (citations omitted). The fact that a plaintiff's physicians had discouraged her from filing a suit for malpractice was not an excuse for the failure to timely file a claim.

The Tenth Circuit Court of Appeals again applied section 78–14–4 to bar a medical malpractice action as untimely in *Magoc v. Hooker*, 796 F.2d 377 (10th Cir.1986). The court upheld the granting of summary judgment under section 78–14–4, finding that a letter from plaintiff's attorney informing the doctor and the hospital that their treatment had been negligent and that he was planning to sue them, constituted knowledge of negligence under the statute. *Id.* at 379. In the case before us, the facts are more compelling. We have not just a letter from plaintiff's attorney, but the filing of a formal Notice of Intent to Commence Action.

The following events all occurred more than two years before this action was filed. Ms. Deschamps's mother had been told that her vasculitis was caused by a "drug reaction." Her mother had hired an attorney, Mr. Hasenyager, to investigate possible malpractice on the part of the health care providers. He hired a pharmacist as part of his investigation. After her mother's death, Ms. Deschamps asked Mr. Hasenyager to continue to pursue her claim. He then hired a physician to evaluate her claim of malpractice. During this period of investigation, he also filed a Notice of Intent to Commence Action, as required by the malpractice statutory scheme.[2] This notice specified substantially the same conduct that Ms. Deschamps has identified as malpractice in her complaint filed in this action.

---

**2.** Ms. Deschamps claims that she should not be held accountable (for purposes of knowledge under section 78–14–4) for the Notice of Intent to Commence Action filed by her first attorney pursuant to the Utah Health Care Malpractice Act, Utah Code Ann. § 78–14–8 (1987). She

alleges that Mr. Hasenyager did not tell her of his filing of the notice, and thus, she claims it is irrelevant on the issue of when she discovered her mother's death was caused by health care providers' negligence. The Utah Supreme Court, however, has applied the principles of

When Ms. Deschamps's first attorney withdrew, after receiving no encouragement from medical experts, she still felt strongly enough to hire another attorney to pursue her claim.

■ Based on the above facts, analyzed under the legal authority we have previously discussed, we conclude that Ms. Deschamps knew or should have known more than two years before she filed this action that her mother's death was the result of the health care providers' negligence. If we accepted Ms. Deschamps's position that she could not know of her legal injury until she received an expert medical opinion confirming malpractice, the statute would be tolled in every case until a plaintiff not only decided to seek, but found favorable expert medical testimony.[3] We do not believe this result is consistent with the purpose of the statutory scheme.

In summary, we conclude that Ms. Deschamps was aware of her legal injury under the *Foil* test more than two years before she filed this medical malpractice action, and thus the trial court's granting of summary judgment pursuant to section 78–14–4 should be affirmed.

BENCH and GREENWOOD, JJ., concur.

agency to an attorney-client relationship. *Russell v. Martell,* 681 P.2d 1193, 1195 (Utah 1984) (holding any neglect by an attorney in failing to respond to a complaint was attributable to his client).

Courts applying agency principles have consistently found that a client is bound by the acts of his attorney within the scope of the attorney's authority. *Blanton v. Womancare, Inc.,* 38 Cal.3d 396, 696 P.2d 645, 649, 212 Cal.Rptr. 151, 156 (1985); *see also Alt v. Krueger,* 4 Haw.App. 201, 663 P.2d 1078, 1082 (1983). Ms. Deschamps does not claim that Mr. Hasenyager acted beyond his authority in filing the Notice of Intent to Commence Action, but merely complains her attorney did not tell her of his action. Other jurisdictions have applied agency principles finding "[t]he attorney's knowledge is deemed to be the client's knowledge, when the attorney acts on his behalf." *Haller v. Wallis,* 89

Wash.2d 539, 573 P.2d 1302, 1307 (1978). Thus, we conclude that any knowledge reflected by Mr. Hasenyager's filing of the Notice of Intent to Commence Action is imputed to Ms. Deschamps.

3. Ms. Deschamps argues that a conclusion that the medical malpractice statute of limitations begins to run before a claimant can find an expert medical opinion confirming negligence will force plaintiffs' attorneys in malpractice actions to violate Utah Rules of Civil Procedure 11. We do not read Rule 11 as requiring the obtaining of a favorable expert medical opinion before a medical malpractice action can be filed. An attorney must only certify that "to the best of his knowledge, information, and belief formed after a reasonable inquiry [the complaint] is well grounded in fact and is warranted by existing law."