John SEALE, personal representative of the Estate of Beverley Seale, Plaintiff and Appellant,

v.

Donald F. GOWANS, M.D., and Holy Cross Hospital, dba Holy Cross Breast Center, and Holy Cross Breast Care Services, Defendants and Appellees.

No. 940599.

Supreme Court of Utah.

Aug. 2, 1996.

Rehearing Denied Oct. 2, 1996.

Fred R. Silvester, Clark A. McClellan, Salt Lake City, for the Seales.

J. Anthony Eyre, Kirk Gibbs, Salt Lake City, for Dr. Gowans.

David W. Slagle, Terence L. Rooney, Brian P. Miller, Salt Lake City, for Holy Cross.

DURHAM, Justice:

Plaintiff Beverley Seale appeals the trial court's denial of her motion for a judgment

notwithstanding the verdict.[1] The trial court, upon findings made by a jury, held that the statute of limitations barred Ms. Seale from bringing a medical malpractice claim against defendants Donald F. Gowans, M.D., and Holy Cross Hospital, dba Holy Cross Breast Center and Holy Cross Breast Care Services, for Dr. Gowans' allegedly negligent failure to diagnose her breast cancer. Ms. Seale now contends that there was insufficient evidence to uphold the verdict. We agree.

This case arose from Dr. Gowans' alleged failure to detect a mass in Ms. Seale's mammogram taken in August 1987 at Holy Cross Hospital. This mass was not discovered until May 1988, when Ms. Seale had another mammogram taken at the same hospital. Ms. Seale was then referred to Dr. Hugh Hogle, who performed a needle biopsy. The biopsy revealed that the mass was cancerous. When Dr. Hogle disclosed the results of the biopsy to Ms. Seale, he also showed her the mammogram taken in 1987 and pointed out to her that it contained the same, although smaller, mass found in the 1988 mammogram.

Within a few days, Ms. Seale underwent a radical mastectomy. Pathological studies of the removed area revealed that a second malignant tumor had formed and that the cancer had spread to eight of her twenty lymph nodes. Although all known cancerous areas had been removed, Dr. Hogle told Ms. Seale that the finding of cancer in her lymph nodes signified a statistically increased probability that cancer would recur in other parts of her body. Ms. Seale subsequently underwent radiation treatment and hormone therapy to enhance the likelihood of complete recovery. She continued to receive treatment and to have periodic monitoring for recurrence of the cancer. Up until August 1991, all subsequent tests remained negative.

In the summer of 1991, Ms. Seale began experiencing discomfort in her left hip. After receiving unsuccessful treatment for the pain, Ms. Seale had a bone scan in August 1991 which revealed cancer in her left hip. That same month, Ms. Seale commenced this action[2] against Dr. Gowans and Holy Cross Hospital for their allegedly negligent delay in diagnosing her cancer, which allowed the cancer to spread to her hip.[3]

Defendants affirmatively pleaded that the two-year limitations period in section 78–14–4 of the Utah Code barred Ms. Seale's action. They argued that the limitations period began to run in 1988 when Ms. Seale learned of her breast cancer and was shown her 1987 mammogram, which contained the suspicious mass Dr. Gowans failed to detect.

The trial court initially denied defendants' motion for summary judgment, holding that a factual issue existed as to whether Ms. Seale knew or had reason to know of her legal injury in 1988. Upon motion to bifurcate the trial, the statute of limitations issue was tried separately before a jury, which returned a special verdict in favor of defendants finding that Ms. Seale "discovered, or through the use of reasonable diligence should have discovered," her injury in June 1988, when she was correctly diagnosed.

Ms. Seale subsequently filed a motion for a judgment notwithstanding the verdict

---

**1.** Ms. Seale, who originally appealed, is now deceased. John Seale, her personal representative, has been substituted as plaintiff.

**2.** Ms. Seale actually commenced this action a few days before doctors informed her that the cancer had spread to her hip. Defendants thus argue that Ms. Seale knew of her injury before the recurrence of the cancer in 1991. We find no merit to this contention. As discussed hereafter, if Ms. Seale's cancer had not recurred, she could not have recovered for an enhanced risk of the cancer's recurrence.

**3.** Both parties use the terms "metastasis" and "metastasized" to denote the spread of the cancer. Defendants construe these terms to mean any spread of the cancer, including the spread to the adjacent lymph nodes. Plaintiff argues that metastasis is the spread to another part of the body. We find this definitional debate inconsequential. The true issue is whether the spread to Ms. Seale's lymph nodes constitutes a legally cognizable injury. Thus, to avoid confusion, we refer to the spread of Ms. Seale's cancer from her breast to her hip as a "recurrence" of the cancer.

(j.n.o.v.), which the trial court denied. Ms. Seale now appeals that denial, contending that the evidence was insufficient to support the verdict. She argues that the evidence does not show that she could have discovered any injury from which she sustained damages until the cancer recurred in her hip. Thus, she posits, the trial court erred in refusing to grant her motion for a j.n.o.v.[4]

■ Before reaching the merits, we set forth the standard of review. A trial court must enter a j.n.o.v. in circumstances where the facts or the law do not support the verdict. Utah R.Civ.P. 59; *see also Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991) ("In passing on a motion for a j.n.o.v., ... a trial court has no latitude and must be correct."). When a party challenges a trial court's denial of a j.n.o.v. on the ground that the evidence presented is insufficient to support a jury verdict, we "reverse only if, viewing the evidence in the light most favorable to the prevailing party, we conclude that the evidence is insufficient to support the verdict." *Heslop v. Bank of Utah*, 839 P.2d 828, 839 (Utah 1992); *see also Crookston*, 817 P.2d at 799; *Hansen v. Stewart*, 761 P.2d 14, 17 (Utah 1988). Thus Ms. Seale " 'must marshal all the evidence supporting the verdict' and then show that the evidence cannot support the verdict." *Hansen*, 761 P.2d at 17–18 (quoting *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 58 (Utah 1986)).

■ The statute of limitations applicable to malpractice actions against health care providers, commonly referred to as the "discovery rule," is set forth in Utah Code Ann. § 78–14–4, which provides in part:

No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers, or through the use of

reasonable diligence should have discovered the injury....

In *Foil v. Ballinger*, 601 P.2d 144, 148 (Utah 1979), this court construed the term "injury" in section 78–14–4 to mean "legal injury." In other words, the two-year limitations period "does not commence to run until the injured person knew or should have known that he had sustained an injury and that the injury was caused by negligent action." *Id.; see also Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1184 (Utah 1989) ("Discovery of legal injury ... encompasses both awareness of physical injury and knowledge that the injury is or may be attributable to negligence.").[5] In *Foil*, we adopted the following reasoning from the Oregon Supreme Court:

To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she had or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, "You had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy," makes a mockery of the law.

601 P.2d at 148–49 (quoting *Berry v. Branner*, 245 Or. 307, 421 P.2d 996, 998 (1966)).

■ As with any affirmative defense, defendants have the burden of proving every element necessary to establish that the statute of limitations bars Ms. Seale's claim. Utah R.Civ.P. 9(h) ("[T]he party pleading the statute must establish, on the trial, the facts showing that the cause of action is so barred."); *see also Stewart v. K & S Co.*, 591 P.2d 433, 435 (Utah 1979); *Slayden v. Sixta*, 250 Kan. 23, 825 P.2d 119, 122 (1992). De-

---

4. Ms. Seale also argues that the trial court erred in refusing to present her proposed instruction to the jury. However, because we find that the trial judge erred in finding that the evidence was sufficient to support the jury's verdict, we do not reach this argument.

5. The court correctly instructed the jury that "[k]nowledge of a 'Legal Injury' is defined as the date upon which the injured person knows or should know that she has sustained an injury and that the injury was caused by negligence."

fendants contend that the evidence produced at trial shows that in May 1988, Ms. Seale had discovered or should have discovered both Dr. Gowans' negligence in failing to detect her cancer and the injury that resulted from that negligence. They assert that the injury triggering the running of the statute was the cancer's spread to Ms. Seale's lymph nodes, which statistically increased the chance that the cancer would recur and thus decreased her chance of long-term survival.[6]

We agree that the evidence was sufficient to show that in 1988, she knew or should have known that Dr. Gowans had negligently failed to diagnose her cancer. We also agree that the evidence was sufficient to show that in 1988, Ms. Seale knew of the cancer's spread to her lymph nodes. However, defendants have failed to show that the cancer's spread to her lymph nodes was a sufficient legal injury to start the running of the limitations period.

▮▮▮▮▮ General tort law recognizes that when a person has suffered physical harm caused by the negligence of another, "he is entitled to recover damages not only for harm already suffered, but also for that which will probably result in the future." Restatement (Second) of Torts § 912 cmt. e (1979); *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 412 (5th Cir.1986). Indeed, most courts follow the general rule that once some injury becomes actionable, a plaintiff *must* plead all damages, both present and future, and cannot thereafter bring another action once future harm occurs. *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1136–37 (5th Cir.1985) ("[O]nce injury results there is but a single tort and not a series of separate torts, one for each resultant harm.... [A] plaintiff may not split this cause of action by seeking damages for some of his injuries in one suit and for later-developing injuries in another.");[7] *see also* Restatement (Second) of Judgments §§ 24–26 (1982). Accordingly, once some harm is manifest, the limitations period begins to run on all claims, present and future. *See Sevy v. Security Title Co.*, 902 P.2d 629, 634 (Utah 1995) ("The general rule regarding statutes of limitations is that the limitation period begins to run when the last event necessary to complete the cause of action occurs."). However, the law does not recognize an inchoate wrong, and therefore, until there is " 'actual loss or damage resulting to the interests of another,' " a claim for negligence is not actionable. *Gideon*, 761 F.2d at 1136 (quoting *Prosser and Keeton on Torts*, § 30, at 165 (5th ed. 1984)); *see also Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993) (actual damages along with breach of duty must be pleaded to sustain cause of action for negligence). As a result, even though there exists a possibility, even a probability, of future harm, it is not enough to sustain a claim, and a plaintiff must wait until some harm manifests itself. Keeton, *supra*, at 165. Until a plaintiff suffers actual harm or damages, the limitations period will not accrue.

▮▮▮▮▮ Applying these principles to the instant case, we find that defendants failed to prove that Ms. Seale suffered a legally cognizable injury when she discovered that the cancer had spread to her lymph nodes. The only evidence that defendants produced regarding the harmful consequence of the can-

---

6. Dr. Hogle testified:
   [W]omen who have small tumors with no positive nodes have long-term survival in excess of 85 percent, 90 percent. When the lymph nodes are involved, it drops significantly, to slightly under 50 percent, and the more lymph nodes that are involved the higher the probabilities are that we're dealing with systemic disease.

7. In the arena of asbestos exposure, a few courts have construed the "single cause of action" rule so as not to preclude a later suit for latent disease even though earlier injuries were incurred. *E.g., Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 112 (D.C.Cir.1982) (allowing suit for mesothelioma even though deceased had earlier discovered he had asbestosis without bringing suit for that disease). Because defendants have failed to show that Ms. Seale discovered any damages resulting from the spread to her lymph nodes in 1988, we need not address whether we would similarly construe the single cause of action rule for failure to diagnose cases.

cer's spread was that it increased the risk that the cancer would recur. They failed to argue or produce evidence that in 1988, Ms. Seale could complain of any actual present damages. Although we agree that the cancer's spread resulted in a dramatic decrease in Ms. Seale's chance of survival, we conclude that without proof of actual damages, an alleged claim for enhanced risk is not adequate to sustain a cause of action for negligence. *See Steingart v. Oliver,* 198 Cal. App.3d 406, 243 Cal.Rptr. 678, 681 (1988) (holding that breach of professional duty causing only nominal damages, speculative harm, or threat of future harm does not suffice to create cause of action for negligence).[8] As a result, defendants have failed to meet their burden of showing that Ms. Seale discovered any legally cognizable injury in 1988 and was therefore barred by the statutory time period when she brought her action in 1991 when the cancer appeared in her hip.

Defendants' reliance on cases from other jurisdictions is misplaced. *See Colbert v. Georgetown Univ.,* 641 A.2d 469, 474 (D.C.Cir.1994) (en banc) (negligent performance of lumpectomy instead of radical mastectomy); *Swain v. Curry,* 595 So.2d 168, 171 (Dist.Ct.App.1992), *review denied,* 601 So.2d 551 (Fla.1992) (failure to detect breast cancer). In these cases, the evidence showed that the plaintiffs had suffered actual damages in conjunction with the increased risk of the cancer's recurrence. Ms. Seale's case is more similar to the circumstance addressed by the Florida Court of Appeals in *Johnson v. Mullee,* 385 So.2d 1038 (Dist.Ct.App.1980), *review denied,* 392 So.2d 1377 (Fla.1981). In that case, a doctor's misdiagnosis caused a patient's cancer to go undetected for six months. Similar to Ms. Seale's circumstance, pathological studies of the area removed from the patient also revealed that the cancer had spread to the patient's lymph nodes. *Id.* at 1039. However, the patient did not file suit for the negligent misdiagnosis until the cancer had recurred in another part of her body two years later. The court held that under those circumstances, the trigger date for the purposes of the statute of limitations was when she "first learned that the cancer had metastasized beyond the surgically removed portions" to another part of her body, not when the patient was correctly diagnosed. *Id.* at 1040–41. The court reasoned that when the patient first learned of the misdiagnosis, there was no evidence that the alleged negligence "had resulted in any harm to her." *Id.* at 1040. The court then noted that under the discovery rule, "it is the *knowledge of injury* " which triggers the statute, "not *notice of probable or possible injury.*" *Id.* at 1041.

Our holding that damages in the form of an enhanced risk only are not sufficient to start the running of the statute of limitations not only comports with generally accepted principles of tort law, but also minimizes the filing of speculative suits, thus saving judicial time and resources. More importantly, any alternative ruling might effectively preclude a patient from any recovery, even when a significant harmful effect, such as the recurrence of cancer, later occurs. As previously noted, current recovery for future harm is "based upon the probability that harm of one sort or another will ensue and upon its probable seriousness if it should ensue." Restatement (Second) of Torts § 912 cmt. e (1979). Many courts, following the Restatement approach, have adopted a "reasonably certain" standard, requiring that the plaintiffs prove that it is more likely than not that the projected consequence will occur. *See Wilson v. Johns–Manville Sales Corp.,* 684 F.2d 111, 119 (D.C.Cir.1982). Following this approach, if we were to adopt defendants'

---

8. This case is unlike the situation we addressed in *Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970, 979–81 (Utah 1993). In that case, we ruled on the narrow issue of whether an individual could recover for medical monitoring costs necessitated by an increased risk of contracting cancer due to an exposure to asbestos. We did not reach the issue of whether the enhanced risk alone was a sufficient injury to support a cause of action. *Id.* at 973 n. 2. In fact, we noted that the plaintiffs could bring another action "if and when they do develop a serious disease as a result of their exposure." *Id.* at 973.

position, plaintiffs who are not exhibiting any actual physical harm but are facing the running of the limitations period would be forced to bring an action for injuries that may or may not occur in the future. However, many of these plaintiffs will be unable to produce the necessary evidence to show that the future harm is more likely to occur than not. Yet if the harm, such as the recurrence of cancer, actually later occurs, the plaintiff would be precluded from any recovery for devastating injuries by reason of having acquired an earlier claim for purely speculative ones. We believe that the better approach is to wait until the potential harm manifests itself, allowing for more certain proof and fewer speculative lawsuits.

Because the only evidence defendants presented at trial, and the only evidence Ms. Seale could marshal, showed that Ms. Seale could not have discovered any legally cognizable injury until 1991, we find that the evidence was insufficient for a jury to find that Ms. Seale discovered her injury in 1988. As a result, the trial court erred in denying Ms. Seale's motion for a j.n.o.v. We reverse and remand the case to allow John Seale, as Ms. Seale's personal representative, to argue her case on its merits.

ZIMMERMAN, C.J., HOWE, J., and GUY R. BURNINGHAM, District Judge, concur in Justice DURHAM's opinion.

STEWART, Associate C.J., concurs in the result.

Having disqualified himself, RUSSON, J., does not participate herein; District Judge GUY R. BURNINGHAM sat.