2007 UT App 10

William J. TUTTLE, Charlene W. Tuttle, J. Kenton Tuttle, and Lori M. Tuttle, Plaintiffs and Appellants,

v.

Jerry D. OLDS, Utah State Engineer; Utah Department of Natural Resources; and Terry Monroe, Defendants and Appellees.

No. 20060364–CA.

Court of Appeals of Utah.

Jan. 11, 2007.

Keith M. Backman and Jack C. Helgesen, Helgesen Waterfall & Jones, Ogden, for Appellants.

Mark L. Shurtleff, atty. gen., and Debra J. Moore, asst. atty. gen., Salt Lake City, for Appellees.

Before BENCH, P.J., GREENWOOD, Associate P.J., and McHUGH, J.

## OPINION

BENCH, Presiding Judge:

¶ 1 William J. Tuttle, Charlene W. Tuttle, J. Kenton Tuttle, and Lori M. Tuttle (Plaintiffs) appeal the trial court's granting of a judgment on the pleadings in favor of Jerry Olds, Utah State Engineer; the Utah Department of Natural Resources; and Terry Monroe (Defendants). We reverse in part and affirm in part.

## BACKGROUND

¶ 2 This controversy arises from Defendants' discovery that Plaintiffs were irrigating land with more water than their certificated water rights permitted. Plaintiffs owned approximately 1700 acres of farmland (the Property) in the Pahvant Valley (the Valley). In 1994, Defendants created a groundwater management plan after a federal study revealed a significant overdraft of water in the Valley. The groundwater management plan called for Defendants to conduct a survey (the Survey) comparing the actual irrigated acreage in the Valley with the acreage that should be irrigated based on the water rights of the Valley's farmers, including Plaintiffs. Defendants sought to discover and stop any illegal watering in order to restore the Valley's groundwater to expected levels.

¶ 3 The management plan included procedures for notifying landowners of illegal watering by letters warning recipients to stop the illegal usage. Because several of their neighbors had received these letters, Plaintiffs became concerned and visited the regional office of the Utah Division of Water Rights, where they inquired about the legality of their current water usage. An unidentified employee directed Plaintiffs to a map of the Valley on the office wall, indicating that the usage in the lands shaded red had been deemed illegal; Plaintiffs' farms were not shaded red. Then, in 1996, Defendants sent a letter to all landowners in the Valley stating that the acreage survey was complete, that all illegal water users had been notified by letter, and that all irrigated lands were now covered by valid water rights.

¶ 4 In 1998, Plaintiffs decided to sell the Property, and began negotiations with the Ellsworths, who were potential buyers. During these negotiations Plaintiffs received a letter from Defendants expressing concern about a diesel-powered well on the Property for which no water rights could be identified. Apparently, this well was not detected during the Survey. Despite this 1998 letter, Plaintiffs used the 1996 letter from Defendants to indicate to the Ellsworths that the Property had sufficient water rights. Plaintiffs sold the Property to the Ellsworths in 1999. Later, after Defendants notified the Ellsworths about the lack of water rights associated with the diesel-powered well, the Ellsworths filed suit against Plaintiffs in federal court. The Ellsworths sought damages for the decrease in the Property's value as a result of the inability to legally irrigate the Property to the extent represented by Plaintiffs. On April 30, 2003, the Ellsworths won a federal judgment against Plaintiffs for approximately $1,400,000.

¶ 5 On April 28, 2004, Plaintiffs filed a notice of claim against Defendants, and thereafter filed suit in district court. Without filing an answer to the complaint, Defendants filed a motion to dismiss Plaintiffs' claims pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. Both parties filed memoranda and exhibits with the court prior to a hearing on the motion. After the hearing, the trial court granted Defendants' motion, but referred to it as a rule 12(c) judgment on the pleadings. Plaintiffs now appeal.

## ISSUES AND STANDARD OF REVIEW

¶ 6 Plaintiffs claim that the trial court's reference to the motion as one for judgment on the pleadings, as well as its failures to exclude matters outside the pleadings and to properly convert the motion into one for summary judgment, warrant reversal. *See* Utah R. Civ. P. 12(b)-(c). "If a court does not exclude material outside the pleadings and fails to convert a rule 12(b)(6) motion to one for summary judgment, it is reversible error unless the dismissal can be justified without considering the outside documents." *Oakwood Vill., L.L.C. v. Albertsons,*

*Inc.*, 2004 UT 101, ¶ 12, 104 P.3d 1226. The propriety of a dismissal under rule 12(b)(6) is a question of law we review for correctness. *See Whipple v. American Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996). Rule 12(b)(6) dismissals are appropriate only where the court concludes that the plaintiff has failed to state a claim upon which relief can be granted, after accepting all the factual allegations made in the complaint as true and drawing all reasonable inferences in a light most favorable to the plaintiff. *See id.*

## ANALYSIS

### I. Procedural Issues

¶ 7 Plaintiffs claim that the trial court should be reversed for treating Defendants' rule 12(b)(6) motion to dismiss as a rule 12(c) motion for judgment on the pleadings. *See* Utah R. Civ. P. 12(c). In its order granting the motion, the trial court referred to the motion as one for a judgment on the pleadings, despite a reminder from Defendants that their motion was one to dismiss under 12(b)(6). Because Defendants never filed an answer to the complaint, the pleadings were not closed at the time the trial court granted the so-called judgment on the pleadings. A motion for a judgment on the pleadings cannot be made, let alone granted, prior to the closing of the pleadings. *See id.* (stating that 12(c) motions are to be made after the pleadings have been closed). We will therefore review the trial court's decision as if it had correctly referred to the granted motion as one for dismissal under rule 12(b)(6).[1]

¶ 8 Plaintiffs claim that, in dismissing the case, the trial court improperly considered material outside the pleadings. If a court considers material outside the pleadings in deciding a rule 12(b)(6) motion to dismiss, the court must convert the motion into one for summary judgment. *See* Utah R. Civ. P. 12(b). This rule 12(b) conversion process includes giving the parties reasonable notice and opportunity to submit all pertinent summary judgment materials for

the court's consideration. *See id.; Hebertson v. Willowcreek Plaza*, 923 P.2d 1389, 1391 (Utah 1996); *Strand v. Associated Students of Univ. of Utah*, 561 P.2d 191, 193 (Utah 1977). The notice and opportunity to submit requirements are especially important with respect to the party against whom judgment is entered. *See Strand*, 561 P.2d at 193 (stating that the opportunity for the non-moving party to submit rule 56 material is particularly important). Our rules provide that complaints and answers constitute pleadings. *See* Utah R. Civ. P. 7(a) (including replies to counterclaims and answers to cross-claims, as well as third-party complaints and answers, within the definition of pleadings). A matter outside the pleadings "include[s] any written or oral evidence ... which ... substantiat[es] ... and does not merely reiterate what is said in the pleadings." *Oakwood Vill.*, 2004 UT 101 at ¶ 12, 104 P.3d 1226 (second, third, and fourth alterations in original) (quotations and citation omitted).

¶ 9 Attached to their memorandum in support of their motion to dismiss, Defendants included copies of the federal judgment in the previous action between the Ellsworths and Plaintiffs. Defendants argue that these materials should be considered part of the pleadings because they merely provide context for Plaintiffs' references to the federal matter in the complaint. *See id.* Our review of the complaint, however, reveals that Plaintiffs refer to the federal matter only with regard to the damages sought, and do not otherwise rely on the findings of the federal court in forming their causes of action. By attaching the federal judgment material to their memorandum, Defendants did not "merely reiterate what [was] said in the pleadings." *Id.* (quotations and citation omitted). The trial court failed to expressly exclude this extraneous material, and the record shows that the parties discussed the federal judgment at the hearing. Because Defendants' memorandum and attachments do not constitute pleadings under rule 7(a), the trial court should have converted the

---

1. The Utah Rules of Civil Procedure contain identical provisions for converting motions under rules 12(b)(6) and 12(c) into motions for summary judgment. *See* Utah R. Civ. P. 12(b), (c). Therefore, our resolution of this appeal is not dependent on our classification of the motion as one to dismiss under rule 12(b)(6).

motion into one for summary judgment pursuant to rule 12(b). *See* Utah R. Civ. P. 12(b).

¶ 10 The trial court failed to give the parties reasonable notice or opportunity to submit other rule 56 materials before granting the motion. *See* Utah R. Civ. P. 56. Neither party knew until the end of the hearing that the trial court would grant what it termed a motion for judgment on the pleadings. Because the trial court failed to properly convert Defendants' rule 12(b)(6) motion into one for summary judgment, we must reverse the trial court's dismissal unless, without considering material outside the complaint, we conclude that Plaintiffs have failed to state a claim upon which relief can be granted. *See Oakwood Vill.,* 2004 UT 101 at ¶ 12, 104 P.3d 1226.

## II. Negligence Claim

 ¶ 11 Plaintiffs argue that the trial court erred by finding that Plaintiffs' negligence claim was time barred because Plaintiffs failed to file a timely notice of claim against Defendants. *See* Utah Code Ann. § 63–30d–402 (2004).[2] A claim against a governmental entity or employee is barred unless a notice of claim is filed "within one year after the claim arises." *Id.* "The general rule regarding statutes of limitations is that the limitation period begins to run when the last event necessary to complete the cause of action occurs." *Sevy v. Security Title Co.,* 902 P.2d 629, 634 (Utah 1995). "However, the law does not recognize an inchoate wrong, and therefore, until there is actual loss or damage resulting to the interests of another, a claim for negligence is not actionable." *Seale v. Gowans,* 923 P.2d 1361, 1364 (Utah 1996) (quotations and citations omitted). "[A]lthough 'there exists a possibility, even a probability, of future harm, it is not enough to sustain a claim, and plaintiff must wait until some harm manifests itself.'" *Eleopulos v. McFarland & Hullinger, L.L.C.,* 2006 UT App 352, ¶ 16, 145 P.3d 1157 (quoting *Seale,* 923 P.2d at 1364).

¶ 12 Until the federal judgment was entered, Plaintiffs did not have a claim of negligence against Defendants because Plaintiffs had not suffered any actual harm or damages. Defendants argue that Plaintiffs suffered harm when they were first notified about the problems concerning the diesel well because the Property was instantly devalued, or that Plaintiffs suffered harm when the Ellsworths filed suit in federal court. Neither of these events, however, constitute an actual loss. *See Seale,* 923 P.2d at 1364. While either event may present the possibility, if not the probability of loss, our cases require more to trigger a claim of negligence. Only after the federal judgment was entered did Plaintiffs suffer an actual loss. We therefore hold, as a matter of law, that Plaintiffs filed a timely notice of claim in compliance with Utah Code section 63–30d–402.

 ¶ 13 Because we hold that Plaintiffs filed a timely notice of claim, we must now address whether the complaint itself states a claim for negligence in order to determine if the dismissal can be justified without considering matters outside the complaint. *See Oakwood Vill., L.L.C. v. Albertsons, Inc.,* 2004 UT 101, ¶ 12, 104 P.3d 1226. On appeal, Plaintiffs specifically challenge the trial court's ruling that Defendants did not owe a duty to Plaintiffs to perform the Survey with reasonable care.

 ¶ 14 A rule 12(b)(6) motion to dismiss is not an opportunity for the trial court to decide the merits of a case: "Rule 12(b)(6) concerns the sufficiency of the pleadings, not the underlying merits of a particular case." *Alvarez v. Galetka,* 933 P.2d 987, 989 (Utah 1997). A reviewing court is "obliged to construe the complaint in a light most favorable to the plaintiff and to indulge all reasonable inferences in its favor." *Heiner v. S.J. Groves & Sons Co.,* 790 P.2d 107, 109 (Utah Ct.App.1990). Reviewing courts may only affirm a rule 12(b)(6) dismissal if "it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of its

**2.** The Utah Governmental Immunity Act was repealed on July 1, 2004, and replaced by the Governmental Immunity Act of Utah on the same date. For the reader's convenience we will cite to the new provisions because the time limitations have not been altered. *See* Utah Code Ann. § 63–30d–402 (2004).

claims." *Id.* Rule 12(b)(6) dismissals are proper, for example, when the plaintiff has complained of negligence, but no factual situation could possibly create a legal duty of care between the defendant and plaintiff. *See generally Ramsey v. Hancock*, 2003 UT App 319, 79 P.3d 423 (affirming because a bank did not owe a duty of reasonable care to the noncustomer plaintiff whose signature was forged by a third party); *Doe v. Corporation of the President of the Church of Jesus Christ of Latter-day Saints*, 2004 UT App 274, 98 P.3d 429 (holding that a 12(b)(6) dismissal was proper because the Church could never owe a duty to warn the plaintiff about a priest's prior child sexual abuse).

¶ 15 Here, Plaintiffs have alleged that Defendants were not statutorily obligated to conduct the Survey, that the Survey was not conducted with reasonable care, and that Plaintiffs' reliance on the negligent Survey resulted in a $1.4 million loss. In viewing these allegations in a light most favorable to Plaintiffs, as we must, Plaintiffs have stated a claim upon which relief could be granted.[3] Plaintiffs could prove a set of facts under which Defendants could be found to have owed a duty of care to Plaintiffs and that the duty was breached, resulting in the damages claimed. We therefore reverse and remand the dismissal of Plaintiffs' negligence claim.[4]

### III. Takings Claim

¶ 16 Plaintiffs contend that the trial court erred in dismissing the complaint in light of the takings claim included therein.

Although water rights constitute a protectable property interest, *see Sigurd City v. State*, 105 Utah 278, 142 P.2d 154, 157 (1943), Plaintiffs failed to allege facts from which the trial court could have determined that Defendants deprived or even sought to deprive Plaintiffs of their water rights. Defendants made no attempt to change or decrease Plaintiffs' certificated water rights, only to stop a use of water not legally covered by Plaintiffs' certificates. Defendants' letter notifying Plaintiffs of the improper water use did not deprive Plaintiffs of anything but the illegal use of water. We therefore conclude that the trial court's dismissal of Plaintiffs' takings claim was not in error.

### CONCLUSION

¶ 17 The trial court erroneously characterized Defendants' rule 12(b)(6) motion as one for a judgment on the pleadings, and when it should have converted the motion into one for summary judgment, the court failed to properly do so. Because Plaintiffs have stated a claim for negligence upon which relief could be granted, the dismissal of that claim cannot be justified under rule 12(b)(6).

¶ 18 For the foregoing reasons, we reverse in part, affirm in part, and remand.

PAMELA T. GREENWOOD, Associate Presiding Judge:

¶ 19 I CONCUR:

McHUGH, Judge (concurring in part and dissenting in part):

¶ 20 I agree with the majority that Plaintiffs have not stated a claim upon which relief

---

**3.** The dissent relies on the public duty doctrine in concluding that Plaintiffs have failed to state a claim upon which relief could be granted. Specifically, the dissent asserts that the facts of the case do not fall into any of the four established exceptions to the general rule that a government agent owes no duty to private citizens. *See Webb v. University of Utah*, 2005 UT 80, ¶ 25, 125 P.3d 906. The dissent's position that Plaintiffs' reliance on the governmental action here was unreasonable implies that there could be a set of facts under which another plaintiff's reliance would be reasonable. Determining the reasonableness of Plaintiffs' reliance on a rule 12(b)(6) motion improperly decides the merits of Plaintiffs' claims at a point where the court should focus only on "the sufficiency of the pleadings." *Alvarez v. Galetka*, 933 P.2d 987, 989 (Utah 1997).

**4.** In briefing, Plaintiffs have urged this court to reverse the trial court's dismissal of their negligence claim because Defendants should be equitably estopped from contradicting the statements made in the 1996 letter. At this stage of the litigation, where Defendants have not filed an answer to Plaintiffs' allegations and we seek to decide only whether Plaintiffs' complaint can survive a rule 12(b)(6) motion, we find it premature to address the affirmative defense of estoppel. *See* Utah R. Civ. P. 8(c) (listing estoppel as an affirmative defense); *Warren v. Papillion Sch. Dist.*, 199 Neb. 410, 259 N.W.2d 281, 287 (1977) (holding that estoppel does not give rise to a cause of action). The complaint makes no mention of estoppel, and since our analysis is limited to the complaint, we decline to discuss the merits of Plaintiffs' estoppel theory.

can be granted for a taking of their water rights without due process of law. I respectfully dissent from the section of the majority opinion regarding Plaintiffs' negligence claim, however, because I do not believe the complaint sets forth facts which establish a special relationship between Jerry D. Olds (the State Engineer) and Plaintiffs that could create a duty to them individually as opposed to the public at large.

¶ 21 To state a claim for negligence, Plaintiffs must establish four elements: " '(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages.' " *Webb v. University of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906 (quoting *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993)).

> For a governmental agency and its agents to be liable for negligently caused injury suffered by a member of the public, the plaintiff must show a breach of a duty owed him as an individual, not merely the breach of an obligation owed to the general public at large by the governmental official.

*Ferree v. State*, 784 P.2d 149, 151 (Utah 1989) (finding that state corrections officers only had a duty to the public at large and did not owe an individual duty to victim to prevent prison inmate on weekend release from murdering victim); *see also Obray v. Malmberg*, 26 Utah 2d 17, 484 P.2d 160, 162 (1971) (holding that public duty doctrine barred plaintiff's claim as evaluated from the complaint); *Cannon v. University of Utah*, 866 P.2d 586, 588–89 (Utah Ct.App.1993) (holding that public duty doctrine barred negligence claim by pedestrians struck by vehicle while crossing state-owned road from university parking lot to university special events center); *Lamarr v. Utah State Dep't of Transp.*, 828 P.2d 535, 538–39 (Utah Ct.App.1992) (holding public duty exception barred claim against Utah Department of Transportation for alleged failure to maintain overpass or to control transient population). For a governmental agent to be liable to a particular individual, there must be a special relationship between that individual and the agent or agency. Whether the State Engineer owed Plaintiffs a duty of care is " 'entirely a question of law to be determined by the court.' " *Lamarr*, 828 P.2d at 538 (quoting *Ferree*, 784 P.2d at 151).

¶ 22 The Utah Supreme Court recently reiterated that

> "A special relationship can be established (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect a person or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff."

*Webb*, 2005 UT 80 at ¶ 25, 125 P.3d 906 (quoting *Day v. State*, 1999 UT 46, ¶ 13, 980 P.2d 1171). Here, Plaintiffs claim that the State Engineer engaged in governmental actions that reasonably induced their detrimental reliance. To satisfy this prong of the special relationship test, however, Plaintiffs' reliance must have been reasonable. *See id.* at ¶ 27 (holding that student's reliance on professor's instruction to walk on icy path during field trip was not reasonable, thereby negating any special relationship and barring negligence claim against university under public duty doctrine). In a situation where a landowner's water rights are defined by actual water shares within the possession of the landowner, I believe that it was not reasonable, as a matter of law, to rely upon the State Engineer's failure to discover unauthorized use during an audit directed at protecting the aquifer.

¶ 23 I also think this result is consistent with the realities of the relationship that existed between the State Engineer and Plaintiffs during the audit.

> Determining whether one party has an affirmative duty to protect another … requires a careful consideration of the consequences for the parties and society at large. If the duty is realistically incapable of performance, *or if it is fundamentally at odds with the nature of the parties'*

*relationship,* we should be loath to term that relationship "special" and to impose a resulting "duty," for it is meaningless to speak of "special relationships" and "duties" in the abstract. These terms are only labels which the legal system applies to defined situations to indicate that certain rights and obligations flow from them....

*Day,* 1999 UT 46 at ¶ 13 n. 1, 980 P.2d 1171 (emphasis added) (omissions in original) (quoting *Beach v. University of Utah,* 726 P.2d 413, 418 (Utah 1986)).

¶ 24 In this case, the State Engineer conducted an audit of water use because the aquifer was being rapidly depleted by unauthorized use. The purpose of the audit was to identify and stop the misappropriation of water for the good of the public at large, not to advise individual landowners as to the volume or value of their individual water rights.[1] Here, Plaintiffs were engaged in unauthorized use and are now claiming that the State Engineer had a special duty to catch them. Under these circumstances, I believe the imposition of a special duty on the State Engineer "is fundamentally at odds with the nature of the parties' relationship." *Id.* For these reasons, I respectfully dissent from the portion of the majority opinion that addresses Plaintiffs' negligence claim.

---

1. For this reason, I am also unpersuaded by Plaintiffs' argument that the State Engineer gratuitously undertook an obligation and therefore was required to perform it with reasonable care. The purpose of the audit was to stop depletion of the aquifer by unauthorized use. The State Engineer never undertook to define or calculate Plaintiffs' water rights. *Compare Nelson v. Salt Lake City,* 919 P.2d 568, 573 (Utah 1996) (holding that once city undertook duty to install fence between park and Jordan River, it had duty to perform with reasonable care), *with Weber v. Springville,* 725 P.2d 1360, 1364–65 (Utah 1986) (finding city owed no duty to prevent two-year-old from falling into creek where city's maintenance of the creek was for flood control and not for the purpose of protection of its citizens).