IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Tamra Rhinehart, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20100599-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (November 16, 2012) |
| State of Utah, | ) | |
| | ) | 2012 UT App 322 |
| Defendant and Appellee. | ) | |

-----

First District, Logan Department, 080102055
The Honorable Kevin K. Allen

Attorneys: Charles R. Ahlstrom, Ogden, for Appellant
Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee

-----

Before Judges Davis, McHugh, and Roth.

DAVIS, Judge:

¶1 Tamra Rhinehart appeals from the summary dismissal of her Petition for Writ of Habeas Corpus and Post-Conviction Relief (the Petition). Rhinehart argues that the trial court erred by converting the State's Motion to Dismiss the Petition into a motion for summary judgment and by then granting summary judgment in favor of the State. We affirm.

I. Conversion of a Motion To Dismiss to a Motion for Summary Judgment

¶2 Because Rhinehart did not preserve this issue for appeal, she seeks review under the plain error standard. *See generally State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346

("[T]he preservation rule applies to every claim, including constitutional questions, unless a defendant can demonstrate that 'exceptional circumstances' exist or 'plain error' occurred."). To demonstrate plain error, Rhinehart must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). All three prongs of the plain error analysis must be met. *See id.* at 1209.

¶3 Here, the trial court properly converted the State's motion to dismiss into a motion for summary judgment because both the motion and Rhinehart's response to the motion were accompanied by "matters outside the pleading . . . [that were] not excluded by the court, . . . and all parties [were] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[1] Utah R. Civ. P. 12(b); *see also Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 14, 104 P.3d 1226 ("[T]he submission of documents outside the pleadings by itself is not a basis for conversion to summary judgment; to effect a rule 12(b) conversion, the court must have relied on those documents for its decision."). "Matters outside the pleading include any written or oral evidence . . . which . . . substantiat[es] . . . and does not merely reiterate what is said in the pleadings." *Oakwood Vill.*, 2004 UT 101, ¶ 12 (alteration and omissions in original) (citation and internal quotation marks omitted). While the documents attached to the State's motion may not have triggered the conversion to summary judgment, the documents attached to Rhinehart's response substantiate, rather than merely reiterate, her claims.[2] *See generally id.* Rhinehart's response to the State's motion to dismiss

---

[1]"It is clear that rule 12(b)(6) of the Utah Rules of Civil Procedure does apply to habeas corpus petitions." *Alverez v. Galetka*, 933 P.2d 987, 989 (Utah 1997). Rule 65B of the Utah Rules of Civil Procedure, governing petitions for habeas corpus, allows for the respondent to "answer or otherwise respond to the petition" and the advisory committee's note to the rule explains that "[t]o the extent that the special procedures set forth in these paragraphs do not cover specific procedural issues that arise during a proceeding, the normal rules of civil procedure will apply." *See* Utah R. Civ. P. 65B(b)(6) & advisory committee's note; *see also Alverez*, 933 P.2d at 989 ("Utah courts have applied rule 12(b)(6) to habeas petitions."). Rule 65C, governing petitions for postconviction relief, also notes that the respondent can respond to a postconviction relief petition with a "motion to dismiss or for summary judgment." *See* Utah R. Civ. P. 65C(k).

[2]Although the trial court stated that it granted the State's motion to dismiss,

(continued...)

included an addendum that consisted of a copy of a newspaper front page that featured a photograph of Rhinehart appearing upset while her trial counsel had her hand on Rhinehart's shoulder in a manner that Rhinehart asserts was "intimidating"; the signature pages from Rhinehart's plea affidavit and postconviction petition intended to substantiate Rhinehart's assertion that the differences in the signatures illustrate the coercion she experienced when entering her plea; a news article titled "Utah bucking U.S. death penalty trend" that suggests that the appeals process for death-row inmates is so extensive in Utah that the death penalty has essentially become a legal fiction in the state; and an unidentified document that contains what appear to be testimonials from individuals who experienced negative side effects while taking Lexapro, an anti-depressant medication that Rhinehart was taking at the time of the plea hearing. These documents do more than reiterate Rhinehart's arguments in the Petition, and the trial court clearly relied on these documents in rendering its decision. The trial court stated as much in its opening paragraph, and it specifically referenced the newspaper photograph in its analysis. Thus, the trial court appropriately converted the State's motion to one for summary judgment. *See generally Walter v. Stewart*, 2003 UT App 86, ¶ 15 n.1, 67 P.3d 1042 (determining that the trial court correctly converted the defendant's motion to dismiss into a motion for summary judgment where both parties "submitted affidavits that were not excluded by the trial court"); *Strand v. Associated Students of the Univ. of Utah*, 561 P.2d 191, 193 (Utah 1977) ("The [trial court's] order [granting the motion to dismiss] recited it was based on the pleadings, the affidavits on file, and arguments of counsel. Therefore, the order granting the motion to dismiss was, in fact, a summary judgment.").

¶4      Likewise, we conclude that Rhinehart was given sufficient notice of the conversion. As the State asserted, "Rhinehart had reasonable notice that conversion would occur when she filed a memorandum affirmatively asking the court to consider matters outside the pleadings," and she was "given express notice of conversion at the hearing when the court agreed with the State that conversion was required." *Compare*

---

[2](...continued)
"labels do not control, where the trial court, in effect, properly treats . . . a Rule 12(b)(6) motion as one for summary judgment but erroneously characterize[s] its action as a ruling on a motion to dismiss for failure to state a claim." *Strand v. Associated Students of the Univ. of Utah*, 561 P.2d 191, 193 n.1 (Utah 1977) (internal quotation marks omitted); *see also Trembly v. Mrs. Fields Cookies*, 884 P.2d 1306, 1310 n.2 (Utah Ct. App. 1994) ("[T]he substance, not caption, of a motion is dispositive in determining the character of the motion.").

*Swenson v. Erickson*, 2000 UT 16, ¶ 9, 998 P.2d 807 ("Because from the outset the parties have submitted extraneous materials . . . , neither party was prejudiced or unfairly surprised by the trial court's implicit conversion of [the defendant's] 12(b)(6) motion into a motion for summary judgment."), *with Bekins Bar V Ranch v. Utah Farm Prod. Credit Ass'n*, 587 P.2d 151, 152 (Utah 1978) (determining that the trial court improperly converted the defendant's motion to dismiss into a motion for summary judgment where the issue of converting the motion was not mentioned during the hearing on the motion or any other time prior to the trial court's order granting summary judgment), *and Tuttle v. Olds*, 2007 UT App 10, ¶ 10, 155 P.3d 893 (reversing the trial court for "fail[ing] to properly convert Defendants' rule 12(b)(6) motion into one for summary judgment" where "[n]either party knew until the end of the hearing that the trial court would grant what it termed a motion for judgment on the pleadings"). Because the conversion of the State's motion to dismiss into a motion for summary judgment was appropriate and Rhinehart was given sufficient notice of the conversion, the trial court did not err in converting the motion. Thus, Rhinehart's plain error argument fails. *See generally Dunn*, 850 P.2d at 1208–09.

## II. Propriety of Summary Judgment

¶5     We review a trial court's grant of "summary judgment for correctness, giving no deference to the trial court's decision." *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56. "Summary judgment is appropriate only where 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Id.* (omission in original) (quoting Utah R. Civ. P. 56(c)). "On appeal from a summary judgment, we view the evidence presented to the trial court in the light most favorable to the losing party." *Floyd v. Western Surgical Assocs., Inc.*, 773 P.2d 401, 403 (Utah Ct. App. 1989) (citation and internal quotation marks omitted).

¶6     In the Petition, Rhinehart asserted several ineffective assistance of counsel claims against her trial counsel and one such claim against her appellate counsel. "With respect to any ineffectiveness claim, a defendant must first demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment. Second, the defendant must show that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citations omitted). To prove the first prong of this analysis, a defendant must "rebut the strong presumption that 'under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* (additional citation and internal quotation marks omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). The prejudice inquiry in this plea setting should

"closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. . . . [T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the idiosyncrasies of the particular decision maker." *Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985) (citations and internal quotation marks omitted); *accord Parsons v. Barnes*, 871 P.2d 516, 525 (Utah 1994); *cf. Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010) ("[T]o obtain relief on [a claim that trial counsel was deficient for misadvising his client about the deportation consequences of pleading guilty], a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."); *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002) ("[D]efendant's mere allegation that he would have insisted on trial but for his trial counsel's errors, although necessary, is ultimately insufficient to entitle him to relief. Rather, we look to the factual circumstances surrounding the plea to determine whether [defendant] would have proceeded to trial. Specifically, while defendant is not required to prove a reasonable probability that, but for counsel's mistakes, he would have prevailed at trial, the assessment of whether he would have changed his plea depends in large part on a prediction of whether the outcome of the district court proceedings would have been different if his counsel had not committed the alleged errors." (second alteration in original) (citation and internal quotation marks omitted)); *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984) ("It is inconceivable to us, and not merely improbable . . . , that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received.").

¶7      Even construing the facts in the light most favorable to Rhinehart and construing her ineffectiveness claims liberally in her favor, Rhinehart cannot demonstrate that her trial counsel acted deficiently or that any deficient performance was prejudicial. Rhinehart asserted in the Petition that her trial counsel was ineffective for advising her to plead guilty in the face of an exculpatory admission from Rhinehart's co-defendant stating that he murdered Rhinehart's ex-husband on his own without Rhinehart's involvement, by misadvising Rhinehart that a guilty plea would result in a sentence with the possibility of parole, by inaccurately explaining the consequences of pleading guilty, by coercing Rhinehart to enter a guilty plea, by instructing Rhinehart to lie to the court to ensure that her plea would be accepted, and by failing to timely withdraw the guilty plea. Rhinehart also implied in the Petition that trial counsel was ineffective for

allowing her to enter a guilty plea while she was emotionally distraught and under the influence of anti-depressant medication.[3]

¶8      We believe trial counsel's recommendation that Rhinehart plead guilty in order to avoid a possible death sentence was "objectively reasonable," especially where the inculpatory evidence outweighed the exculpatory evidence. *Cf. State v. Nicholls*, 2009 UT 12, ¶ 37, 203 P.3d 976 (determining that trial counsel's advice to accept a plea offer that spared the defendant a possible death sentence was objectively reasonable). As the State puts it, "this is . . . not a case in which there was unassailable, incontrovertible evidence affirmatively proving that a defendant was innocent . . . . Rather, this was a case in which there was strong, admissible evidence from which the State could prove to a jury that Rhinehart was guilty," the weight of which demonstrates the reasonableness of trial counsel's advice that Rhinehart plead guilty. Additionally, even if it were true that trial counsel misadvised Rhinehart about the consequences of pleading guilty and the possible sentences she would face as a result of doing so, any harm this caused was cured at the plea hearing when Rhinehart repeatedly acknowledged under oath that she understood the consequences of her plea. Similarly, any deficiency on the part of trial counsel for failing to address Rhinehart's competency to plead guilty the day of the plea hearing was also remedied during the hearing by Rhinehart's repeated assertions that she was "in complete control of [her] mental faculties" and that the anti-depressant medication she was taking did not "affect [her] ability to understand what [she was] doing [at the plea hearing] by pleading guilty." *Cf. Williamson v. Ward*, 110 F.3d 1508, 1518 (10th Cir. 1997) (determining that where the defendant's "competency was open to serious question," it was deficient of trial counsel "in a capital case to [not] investigate [the defendant's competency] further before deciding to forego a competency determination"); *State v. Young*, 780 P.2d 1233, 1237 (Utah 1989) ("[M]ere distress, nervousness, or emotional upset at the time of pleading does not establish mental incompetence to plead . . . .").

---

[3]We do not address the issue of Rhinehart's competency to enter her plea because a challenge to the validity of the plea is procedurally barred. *See* Utah Code Ann. § 78B-9-106(1)(c) (LexisNexis Supp. 2009). Likewise, the question of whether Rhinehart was actually coerced into pleading guilty, to an extent, goes to the validity of the plea. We determine instead that even if Rhinehart was coerced, she cannot demonstrate that she was prejudiced by such coercion where she has not "convince[d] the court that a decision to reject the plea bargain would have been rational under the circumstances," *see Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). *See infra* ¶ 8.

¶9     Because failure to satisfy either of the two prongs of the ineffective assistance standard is fatal to Rhinehart's claim, "we may choose not to consider the adequacy of counsel's performance if we determine that any claimed error was not harmful." *See State v. Dunn*, 850 P.2d 1201, 1226 (Utah 1993). Accordingly, we review the remainder of Rhinehart's ineffectiveness claims against trial counsel under the prejudice prong of the ineffective assistance standard. Under this standard, Rhinehart's assertions that she was coerced into pleading guilty are unavailing because she cannot demonstrate that going to trial "would have been rational under the circumstances" considering the weight of the inculpatory evidence against her. *See Padilla*, 130 S. Ct. at 1485. Likewise, Rhinehart's contention that trial counsel ineffectively failed to move to withdraw her guilty plea requires a showing that she had a chance of succeeding on such a motion. *See State v. Rhinehart* (*Rhinehart I*), 2007 UT 61, ¶ 13, 167 P.3d 1046 ("The ineffectiveness of counsel that contributes to a flawed guilty plea . . . can spare a defendant the consequences of her plea only if the defendant makes out the same case required of every defendant who seeks to withdraw a plea: that the plea was not knowing and voluntary."). However, given Rhinehart's repeated assertions during the plea colloquy that she was competent and not coerced, and the trial court's compliance with procedures governing plea colloquies, *see generally* Utah R. Crim. P. 11(e), we are not convinced "that there is a reasonable probability," *see Strickland*, 466 U.S. at 694, that such a motion would have been granted. *See generally* Utah Code Ann. § 77-13-6(2)(a) (LexisNexis 2008) ("A plea of guilty . . . may be withdrawn only upon leave of the court and a showing that it was not knowingly or voluntarily made."); *State v. Alexander*, 2012 UT 27, ¶ 16, 279 P.3d 371 ("A plea is not knowing and voluntary when the record demonstrates that the accused does not understand the nature of the constitutional protections that he is waiving, or [when] he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." (alteration in original) (citation and internal quotation marks omitted)); *State v. Corwell*, 2005 UT 28, ¶¶ 12, 22, 114 P.3d 569 (explaining that rule 11(e) of the Utah Rules of Criminal Procedure provides the trial court with the framework necessary to ensure that a defendant's plea is knowing and voluntary and that one method by which the trial court can accomplish this is by "'questioning . . . the defendant on the record or'" by "properly incorporat[ing] into the record the plea affidavit," if one is used and "'the court has established that the defendant has read, understood, and acknowledged the contents of the [affidavit]'" (quoting Utah R. Crim. P. 11(e))). Assuming that trial counsel did act deficiently by coercing Rhinehart to plead guilty and in failing to timely withdraw Rhinehart's plea, Rhinehart fails to demonstrate "[a] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See State v. Templin*, 805 P.2d 182, 187 (Utah 1990) (citation and internal quotation marks omitted). Accordingly, the trial court

properly granted summary judgment in favor of the State on each of Rhinehart's ineffectiveness claims against trial counsel.

¶10    Last, Rhinehart argues that appellate counsel was ineffective for failing to argue that the misplea doctrine applied to her case. "As is the case in challenges to the effectiveness of trial counsel, to prevail on a claim of ineffective assistance of appellate counsel, a petitioner must prove that appellate counsel's representation fell below an objective standard of reasonable conduct and that the deficient performance prejudiced [him]." *Lafferty v. State*, 2007 UT 73, ¶ 39, 175 P.3d 530 (alteration in original) (citation and internal quotation marks omitted). To demonstrate that appellate "counsel was ineffective for omitting a claim, [Rhinehart] must show that the issue [was] obvious from the trial record and . . . probably would have resulted in reversal on appeal." *Id.* (second alteration and omission in original) (citation and internal quotation marks omitted).

¶11    Assuming the propriety of the invocation of the misplea doctrine by Rhinehart,[4] appellate counsel's failure to raise it was not an "obvious reversible error." *Cf. State v. Ott*, 2010 UT 1, ¶ 19, 247 P.3d 344 ("[A] misplea may be granted 'where obvious reversible error has been committed in connection with the terms or the acceptance of the plea agreement and no undue prejudice to the defendant is apparent[,] . . . in situations where some fraud or deception by one party leads to the acceptance of the plea agreement[,] . . . [and in] other circumstances where the balancing of the interests and legitimate expectations of the defendant and the public [warrant a misplea].'" (second and third alterations and omissions in original) (quoting *State v. Kay*, 717 P.2d

---

[4]The majority of Utah case law involving the misplea doctrine involves situations in which the trial judge, not the defendant, has invoked it. *See, e.g., State v. Kay*, 717 P.2d 1294, 1305 (Utah 1986), *overruled in part on other grounds by State v. Hoff*, 814 P.2d 1119, 1123 (Utah 1991); *State v. Lopez,* 2005 UT App 496, ¶¶ 6–8, 128 P.3d 1; *State v. Horrocks*, 2001 UT App 4, ¶¶ 26, 32, 17 P.3d 1145; *State v. Moss*, 921 P.2d 1021, 1027 (Utah Ct. App. 1996). *But see State v. Schubarth*, 2005 UT App 166U, para. 2 (mem.) (remanding for entry of a misplea based on the defendant's argument "that the trial court erred by failing to declare a misplea because his plea agreement's six-year abeyance period violates [the Utah Code]"). That the doctrine is available to the State and the trial court, rather than a defendant, makes sense in light of the purpose of the doctrine, to allow rescission of a plea "where obvious reversible error has been committed in connection with the terms or the acceptance of the plea agreement,"and the test employed in determining whether a misplea ought to be granted, which in part focuses on whether the application of the doctrine would be "undu[ly] prejudic[ial] to the defendant," *see Kay*, 717 P.2d at 1305.

1294, 1305 (Utah 1986), *overruled on other grounds by State v. Hoff*, 814 P.2d 1119, 1123 (Utah 1991))); *see also State v. Moss*, 921 P.2d 1021, 1027 (Utah 1996) (affirming the trial court's sua sponte rescission of the defendant's plea in abeyance and declaring a misplea where the "trial court's acceptance of defendant's plea [was] in direct contravention of the express terms of" an applicable section of the Utah Code); *Kay*, 717 P.2d at 1305 (upholding the application of the misplea doctrine and subsequent revocation of the defendant's plea where the Utah Rules of Criminal Procedure were violated in the taking of the guilty plea). Accordingly, appellate counsel's omission does not amount to ineffective assistance. *See Lafferty*, 2007 UT 73, ¶ 39.

¶12 Additionally, Rhinehart asserts that her plea was flawed because "[s]he was under the influence of Lexapro, [was] extremely emotional, and collapsed during the proceeding" and because she "was given incorrect and ambiguous information regarding the consequences of her plea, the nature of the charge, and her right to go to trial," and that these flaws justify the application of the doctrine. However, as the trial court noted, it "was aware that [Rhinehart] was taking Lexapro." It addressed several times "the effects Lexapro had on [Rhinehart]'s ability to enter a knowing and voluntary plea," and each time, Rhinehart "stated that the medication did not negatively affect her." Further, Rhinehart submitted insufficient evidence to substantiate her claim that Lexapro impaired her ability to plead guilty—the snippet of information apparently printed from an online forum containing comments from anonymous individuals about the side effects they had experienced while taking Lexapro is hardly sufficient. *See generally Oliver v. State*, 2006 UT 60, ¶ 11, 147 P.3d 410 ("The critical question is whether the drugs—if they have a capacity to impair the defendant's ability to plea—have in fact done so on this occasion. The court can make this determination most effectively by interacting with the defendant himself, by asking him questions concerning his mental state and ability to understand the procedures, and then weighing both the content of the responses offered as well as the demeanor and general coherence of the defendant that can be gleaned from his responses." (citation and internal quotation marks omitted)); *id.* ¶ 14 ("In most instances, . . . when a mood-altering drug is given to a defendant by a physician, it is to improve the defendant's cognitive abilities. In other words, the fact that a defendant has undergone a medical evaluation and is receiving medication to treat a psychological infirmity is often evidence weighing in favor of a finding that the defendant is capable of entering a knowing and voluntary plea.").

¶13 In conclusion, the State's motion to dismiss Rhinehart's petition was properly converted to a summary judgment motion. Furthermore, given Rhinehart's inability to satisfy both prongs of the ineffective assistance standard even when assuming the facts

in the light most favorable to her, the motion for summary judgment was properly granted in favor of the State. Affirmed.

_____
James Z. Davis, Judge

-----

¶14     WE CONCUR:

_____
Carolyn B. McHugh, Judge

_____
Stephen L. Roth, Judge