FILED
United States Court of Appeals
Tenth Circuit

September 4, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

HAL JENKINS, as the assignee of
certain of the claims of CLJ
Healthcare, LLC; CLJ
HEALTHCARE, LLC, as to certain
non-assigned claims,

     Plaintiffs - Appellants

v.

PRIME INSURANCE, CO.; PRIME
HOLDINGS INSURANCE
SERVICES, INC., d/b/a Claims
Direct Access; DAVID McBRIDE,
ESQ.; EVOLUTION INSURANCE
BROKERS, LC,

     Defendants - Appellees.

No. 23-4113
(D.C. No. 2:21-CV-00130-DAK)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BACHARACH**, and **ROSSMAN**, Circuit Judges.
_____

This appeal grew out of a medical malpractice action against a

physician's company (CLJ Healthcare, LLC). CLJ had liability insurance

_____

[*]    This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value if
otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

through a *wasting policy*, where the amount for indemnity is reduced by the amount spent on defense costs. *See SEC v. DeYoung*, 850 F.3d 1172, 1177 n.2 (10th Cir. 2017) (defining a *wasting policy*).

The policy limit gave rise to a dispute, which stymied settlement negotiations with the plaintiff in the malpractice action. But the insurer (Prime Insurance Co.) then obtained a favorable declaratory judgment on the policy limit.

When the settlement negotiations fell apart, the malpractice action resulted in a large excess judgment against CLJ. By then, however, Prime had exhausted the policy limit. So Prime stopped providing a defense, which led CLJ to sue Prime, its former attorney (Mr. David McBride), and the company that had sold the policy (Evolution Insurance Brokers, LC).

These suits give rise to four sets of appellate issues:

1.     **Effect of the declaratory judgment on the contract claim**. CLJ claimed that Prime had breached the insurance contract because the policy limit had been $100,000; Prime claimed that the policy limit had been only $50,000. A state court issued a declaratory judgment stating that the policy limit had been only $50,000. CLJ denies that it's bound by the declaratory judgment, arguing that the state court lacked jurisdiction and didn't allow full and fair litigation of the issue. We disagree. The court did have jurisdiction, and CLJ had notice and an opportunity to contest Prime's characterization of the policy limit. So CLJ is bound by the declaratory judgment.

2.     **Timeliness of the bad faith claim.** CLJ also sued Prime for bad faith. This claim could involve either a contract or tort. CLJ asserts a tort theory, and Prime urges a right to summary judgment on the ground that the tort claim is time-barred. We disagree with Prime. A tort claim wouldn't accrue until final

2

disposition of the underlying malpractice claim. With that disposition as the accrual date, CLJ sued for bad faith within the limitations period. So the bad faith claim is timely and should have withstood a summary-judgment motion.

3. **Timeliness of the claims for legal malpractice and breach of fiduciary duty.** CLJ also sued its former attorney. The district court properly dismissed these claims based on timeliness because CLJ could have sued when the former attorney withdrew.

4. **The existence of a cause of action for unauthorized sale of insurance.** CLJ also sued Evolution Insurance under a state statute. In district court, however, CLJ hadn't adequately briefed the availability of a cause of action under the statute. By failing to adequately develop this argument in district court, CLJ failed to preserve the issue.

**Background**

I. **Prime unsuccessfully negotiates with the victim and stops defending CLJ.**

CLJ's policy was triggered when a woman died after getting liposuction surgery. The death led the woman's father, Mr. Hal Jenkins, to sue CLJ for malpractice. In turn, CLJ submitted a claim to Prime. Prime then retained Mr. David McBride to represent CLJ in the malpractice action.

In an effort to settle, Prime offered $50,000 to Mr. Jenkins, stating that this amount was the policy limit. Mr. Jenkins counter-offered with $100,000, stating that this was the actual amount of the policy limit. By the time he counter-offered, Prime had spent roughly $11,000 in the litigation, reducing the policy limit. So Prime offered the remaining policy

limit (about $39,000) to Mr. Jenkins. He counter-offered with $100,000, insisting that this was the actual policy amount. The negotiations collapsed.

As the litigation continued, Prime said that it had spent the entire $50,000 in defense, leaving nothing to indemnify CLJ in the event of an adverse judgment. So Prime withdrew its defense of CLJ and requested a release.

## II.     Prime gets a declaratory judgment, and Mr. Jenkins gets an excess judgment.

CLJ declined to release Prime, arguing that the policy limit had been $100,000. Prime disagreed and sued in Utah state court for a declaration discontinuing any further duty to defend CLJ. But CLJ didn't appear, so the court granted a default judgment to Prime, declaring that the policy limit had been $50,000—not $100,000. Mr. Jenkins later obtained a judgment for $60 million against CLJ.

## III.    CLJ unsuccessfully sues Mr. McBride, Evolution Insurance, and Prime.

CLJ sued in Georgia,[1] and the Georgia federal district court dismissed the claims against Mr. McBride and Evolution Insurance. The action was then transferred to Utah federal district court. That court

- concluded that Prime's default judgment had prevented CLJ from relitigating the amount of the policy limit and

---

[1]     In the Georgia case, there were two plaintiffs:

- dismissed the claims for breach of contract and negligence.

The dismissals left the bad-faith claim against Prime.

But the Utah federal district court then granted summary judgment to Prime on the bad-faith claim. In granting summary judgment, the court adopted all of the rulings previously made by the Georgia federal district court.

## CLJ's Claims Against Prime

### I.    The declaratory judgment prevented liability for breach of contract.

CLJ questions the district court's reliance on the declaratory judgment, arguing that (1) the state court lacked jurisdiction and (2) the entry of a default judgment didn't entail full, fair litigation of the amount of the policy limit. We reject both arguments.

### A.    We apply the standard for dismissal.

When reviewing this ruling, we conduct de novo review based on the standard that applied in district court. *See Cty. of Santa Fe v. Pub. Serv.*

---

1.    CLJ

2.    Mr. Jenkins as the assignee of some of CLJ's claims.

Mr. Jenkins does not assert any of his own claims, and the complaint does not say which claims are CLJ's and which are Mr. Jenkins's.

Both plaintiffs have appealed, but Mr. Jenkins appeals only as the assignee of some of CLJ's claims. So we refer to the plaintiffs collectively as *CLJ*.

5

*Co.*, 311 F.3d 1031, 1034 (10th Cir. 2022) ("Because the district court dismissed [a] complaint under Rule 12(b)(6), we review the dismissal de novo, applying the same standards as the district court."). The district court had to determine whether allegations in the complaint stated a facially plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**B.    Utah law governs the preclusive effect of the declaratory judgment.**

In addressing the preclusive effect of the declaratory judgment, we apply Utah law. 28 U.S.C. § 1738; *see Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered."). In applying Utah law, we predict how the Utah Supreme Court would decide the issue. *Wade v. Emcasco Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007).

Under Utah law, a judgment precludes relitigation only if the first court had jurisdiction and the issue was fully and fairly litigated. *See Gudmundson v. Del Ozone*, 232 P.3d 1059, 1067 (Utah 2010) (full and fair litigation); *Amundsen v. Univ. of Utah*, 448 P.3d 1224, 1231 (Utah 2019) (jurisdiction).[2] On these requirements, Prime bore the burden of persuasion. *Timm v. Dewsnup*, 851 P.2d 1178, 1184 (Utah 1993).

---

[2]    Preclusion also requires the existence of the same issue, a final judgment on the merits, and the participation of the same parties or privity of the parties. *Madsen v. Borthick*, 769 P.2d 245, 250 (Utah 1988). CLJ

6

### C. Jurisdiction existed in state court.

CLJ argues that the Utah court lacked jurisdiction over either the subject-matter or CLJ itself.

### 1. Subject-matter jurisdiction existed.

CLJ challenges subject-matter jurisdiction based on ripeness, arguing that Prime had already decided what to do before seeking a declaratory judgment. For this argument, CLJ points out that Prime had already stopped providing CLJ with a defense before seeking a declaratory judgment.

An issue is ripe when "there is an actual controversy, or . . . a substantial likelihood that one will develop." *Salt Lake Cty. Comm'n v. Salt Lake Cty. Atty.*, 985 P.2d 899, 903 (Utah 1999). The existence of a controversy remained when Prime sought a declaratory judgment. The controversy concerned the malpractice action against CLJ. Prime had contended that it no longer needed to provide CLJ with a defense. In contrast, CLJ contended that Prime had still needed to provide a defense and characterized its withdrawal as a breach of contract.

The dispute then escalated. Prime proposed a release; CLJ not only declined to sign the release but also contracted with Mr. Jenkins to split

---

doesn't question the existence of the same issues and parties. CLJ does challenge the existence of a final judgment, but bases that challenge on jurisdiction.

any eventual proceeds from litigation against Prime.[3] Though Prime had decided not to pay, its dispute with CLJ hadn't vanished. The disagreement was real, creating an actual controversy between CLJ and Prime. The state court thus had jurisdiction over the subject matter.

### 2.    Personal jurisdiction existed over CLJ.

CLJ also argues that it wasn't subject to personal jurisdiction in Utah when the court entered the declaratory judgment. Despite making this argument, CLJ admittedly consented to Utah's jurisdiction: Prime's policy stated that "by entering into this policy of insurance, [CLJ] is deemed to be transacting business within the State of Utah such that the courts of Utah may exercise jurisdiction over it regarding any issues arising out of this Policy." Appellants' App'x vol. 1, at 138. This consent would generally waive CLJ's right to challenge personal jurisdiction. *Petrowski v. Hawkeye-Sec. Ins. Co.*, 350 U.S. 495, 496 (1956).[4] But an exception would exist if the waiver conflicted with a strong public policy. *Jacobsen Constr. Co. v. Teton Builders*, 106 P.3d 719, 724 (Utah 2005).

---

[3]    Mr. Jenkins would get 85% and CLJ would get 15%.

[4]    The general rule applies when a "rational nexus" exists between Utah and the parties or the transactions. *Phone Directories Co., Inc. v. Henderson*, 8 P.3d 256, 261 (Utah 2000). A rational nexus existed between Utah and the transactions because CLJ was in Utah and the policy had been issued, underwritten, and serviced in Utah.

CLJ invokes a public policy involving geographic inconvenience. In relying on inconvenience, CLJ argues that it operated in Georgia and would have struggled to litigate in Utah state court. But CLJ lacked support for this argument. CLJ had operated in Georgia, but had known that the insurer was in Utah and consented to jurisdiction there. In addition, CLJ didn't provide any evidence in district court about (1) the need to attend proceedings in Utah or (2) the difficulty or expense of litigating in Utah. Without such evidence, CLJ failed to show that enforcement of the waiver would violate a strong public policy of Utah. *See Jacobsen Constr. Co. v. Teton Builders*, 106 P.3d 719, 724 (Utah 2005); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 1, 16 (1972) (stating that the Court should enforce a consent to jurisdiction when it was freely negotiated with recognition of the alleged inconvenience to one of the parties).

Because CLJ failed to satisfy its burden on the exception, the district court correctly concluded that the insurance policy had waived CLJ's right to challenge personal jurisdiction. We thus conclude that the Utah state court had personal jurisdiction when entering the declaratory judgment.

**D.    The amount of the policy limit was fully and fairly litigated.**

The declaratory judgment could prevent fresh consideration only if the parties had fully and fairly litigated the amount of the policy limit. CLJ argues that this requirement wasn't satisfied because the Utah court

9

- had granted declaratory relief through a default judgment,

- had awarded relief to Prime beyond the prayer, and

- had entered the default judgment without giving Mr. Jenkins a chance to participate.

We reject these arguments.

### 1. A declaratory judgment can have preclusive effect even when the judgment arises from a default.

What does it mean to *fully* and *fairly* litigate an issue? Here, for example, CLJ points out that the Utah court entered a declaratory judgment by default. When the declaratory judgment arises from a default, Utah courts haven't squarely decided whether the issue had been fully and fairly litigated. Without any applicable precedent, we must predict how the Utah Supreme Court would decide the issue. *See* CLJ's Claims Against Prime– Part I(B), above.

Even in the absence of an actual trial or the equivalent, Utah courts consider an issue *fully and fairly litigated* when a party fails to respond despite adequate notice. *3D Constr. & Dev. LLC v. Old Standard Life Ins. Co.*, 117 P.3d 1082, 1087 (Utah App. 2005). That opportunity exists when a party obtains notice, reasonably calculated to enable someone to object to the requested relief. *Career Serv. Rev. Bd. v. Utah Dep't of Corrs.*, 942 P.2d 933, 939 (Utah 1997). And here, CLJ doesn't deny notice of the Utah proceeding or an opportunity to appear and contest Prime's position on the policy limit.

10

We can consider not only Utah's case law, but also the guidance from the *Restatement (Second) of Judgments*. *See C.R. England v. Swift Transp. Co.*, 437 P.3d 343, 347 (Utah 2019) (stating that the Restatements provide "persuasive authority"); *Grundberg v. Upjohn Co.*, 813 P.2d 89, 95 (Utah 1991) (stating that the Restatements serve "an appropriate advisory role to courts in approaching unsettled areas of law"). The Restatement addresses the requirement of full and fair litigation through a general rule and special rules for declaratory judgments. *Restatement (Second) of Judgments* ch. 1, at 13 (1982).

The general rule appears in the commentary to § 27. There the Restatement says that an issue generally isn't considered *fully and fairly litigated* when the court enters a default judgment. *Id.* § 2 cmt.7, (e).

But the Restatement modifies the rules of issue preclusion when a court enters a declaratory judgment. *See id.* ch. 1, at 13 (stating that certain parts of the Restatement, including § 33, recognize that "the basic rules of . . . issue preclusion may be modified in deference to the special purposes of [declaratory relief]"). When a party obtains declaratory relief, the issue may be considered *fully and fairly litigated* even when the judgment was entered through a default. *See id.* § 33, com. (b) (stating that "[t]his preclusive effect applies even as to a party who makes no appearance in the action"). The commentary explains that if the rule were

11

otherwise, a party could "abort all possible effects of a declaratory judgment by simply defaulting." *Id.*

Given the nature of Utah's treatment of *full and fair litigation* and guidance from the Restatement, we predict that the Utah Supreme Court would treat the policy limit as fully and fairly litigated even though the earlier judgment had arisen by default.

**2.    The declaratory judgment did not exceed the scope of the complaint.**

CLJ also contends that the policy limit wasn't fully and fairly litigated because Prime's complaint had addressed only a duty to defend—not the scope of a duty to indemnify. For this contention, CLJ points out that the default judgment couldn't exceed what Prime had requested in its pleadings. *See* Utah R. Civ. P. 54(c). So we consider whether the complaint fairly encompassed Prime's duty to indemnify CLJ.

In the complaint, Prime stated that the policy had limits of

- $50,000 for professional liability and

- $100,000 for aggregate coverage.

Appellants' App'x vol. 3, at 6. In addition, the complaint contained a request for declaratory relief, stating that "Prime ha[d] no obligation to provide . . . CLJ's defense in the Jenkins . . . claim[] beyond the $50,000

12

Professional Liability limit." *Id.* at 11.[5] Through this language, the complaint encompassed a request for declaratory relief on Prime's duty to indemnify CLJ.

CLJ argues that even if the complaint had encompassed indemnity, the Utah court relied instead on a later document renewing the motion for a declaratory judgment. CLJ is mistaken. The Utah court said that it was granting Prime's motion for a default judgment (rather than the later renewal of that motion). And Prime based its motion on the allegations in the complaint. So the court didn't grant declaratory relief beyond Prime's allegations about an obligation to indemnify CLJ. We thus conclude that CLJ had notice that the requested declaratory judgment would include the extent of Prime's duty to indemnify.

### 3.    The declaratory judgment did not prejudice Mr. Jenkins's rights.

Finally, CLJ argues that the policy limit wasn't fully and fairly litigated because Mr. Jenkins couldn't participate. We reject this argument.

A Utah statute provides that in an action for declaratory relief, the plaintiff must include everyone that would be affected. Utah Code Ann. § 78B-6-403(1). But the Utah Supreme Court has held that injured third

---

[5]    Prime's duty to defend went beyond the duty to indemnify. *See Ace Am. Ins. Co. v. Dish Network, LLC*, 883 F.3d 881, 887 (10th Cir. 2018). So Prime argues that even if it had addressed only the duty to defend, the state court could have gone further and addressed indemnification. We need not address this argument.

parties—like Mr. Jenkins—aren't proper parties in actions for declaratory relief as to the terms of an insurance policy. *Utah Farm Bureau Ins. Co. v. Chugg*, 315 P.2d 277, 281 (Utah 1957).

* * *

We conclude that the amount of the policy limit was fully and fairly litigated. Though the Utah court granted declaratory relief through a default judgment, Prime had given CLJ a chance to participate, had alleged a limit of $50,000 for indemnity, and hadn't needed to include Mr. Jenkins as a party.

### E.    The declaratory judgment precluded liability for breach of contract.

CLJ claims breach of contract, relying on Prime's

- obligation to provide a defense to CLJ in the malpractice action,

- alleged misrepresentation of the policy limit, and

- withdrawal of a defense after spending $50,000 on CLJ's defense.

But the award of a declaratory judgment prevents relitigation of the amount of the policy limit. *See* CLJ's Claims Against Prime–Part I, above. And CLJ bases its contract claim on a challenge to the policy limit. So the district court didn't err in dismissing the claim for breach of contract.

## II.    The statute of limitations didn't preclude liability for bad faith.

CLJ also sued Prime for bad faith in rejecting Mr. Jenkins's settlement demand without telling CLJ of its right to contribute. For this claim, the district court granted summary judgment to Prime, concluding that the bad-faith claim had been time-barred.

We apply de novo review based on the summary-judgment standard that applied in district court. *Grubb v. DXP Enters., Inc.*, 85 F.4th 959, 965 (10th Cir. 2023). Under that standard, Prime would be entitled to summary judgment upon showing a right to judgment as a matter of law and an absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(a). Applying this standard, we conclude that Prime was not entitled to summary judgment on the claim for bad faith.

### A.    Prime bore the burden on timeliness.

Timeliness is an affirmative defense. *Stewart v. K&S Co., Inc.*, 591 P.2d 433, 435 (Utah 1979); *Seale v. Gowans*, 923 P.2d 1361, 1363 (Utah 1996). So Prime bore the burden on timeliness. *Seale*, 923 P.2d at 1363.

### B.    The bad-faith claim accrued only upon the issuance of an excess judgment.

In Utah, a bad-faith claim can be based on either the insurance contract or the insurer's fiduciary duty. The difference turns on timing. If the insurance company's wrongdoing had preceded the third-party's suit, Utah law would regard the bad-faith claim as contractual. *See Black v.*

15

*Allstate Ins. Co.*, 100 P.3d 1163, 1170 (Utah 2004) (stating that before an insured is sued by a third party, the insurer's breach of duty in handling the claim involves a cause of action in contract rather than tort). If the wrongdoing came after the third party had sued, the bad-faith claim would rest on tort principles. *Id.*

The district court concluded that the bad-faith claim would be untimely under a theory involving either contract or tort. On appeal, CLJ characterizes its bad-faith claim as a tort based on Prime's duty as a fiduciary.[6] So we address timeliness of the claim under a tort theory.

On appeal, CLJ relies on two acts or omissions:

1.      Prime failed to tell CLJ how much coverage was available.

2.      Mr. Jenkins demanded $100,000 in settlement, but Prime counter-offered for less without telling CLJ that it could contribute to the settlement.

The parties agree that the period of limitations is four years, and CLJ sued on March 10, 2020. So the bad-faith claim would be timely only if it had accrued on or after March 10, 2016.

When did the bad faith claim accrue? The Utah Supreme Court hasn't squarely decided the issue. So we must predict how the state's highest

---

[6]      In framing its bad-faith claim as a tort, CLJ relies on *Beck v. Farmers Insurance Exchange*, 701 P.2d 795 (Utah 1985). There the Utah Supreme Court stated that in a situation involving a third party, the insurance contract created a fiduciary relationship because the insured had to depend on the insurer. *Id.* at 799.

court would decide the issue. *See* CLJ's Claims Against Prime–Part I(B), above. For this prediction, we can "consider all resources available, including decisions of [Utah] courts, other state courts and federal courts, in addition to the general weight and trend of authority." *Id.* (internal quotation marks and citation omitted). We can draw here on

- dicta from the Utah Court of Appeals,

- case law from the majority of jurisdictions to address the issue, and

- scholarly commentary.

The Utah Court of Appeals addressed the issue in *Campbell v. State Farm Mutual Automobile Insurance Company*, 840 P.2d 130 (Utah Ct. App. 1992). There the insured sued the insurance company for bad faith in handling a third party's tort claim. *Id.* at 134. The insured alleged that the insurance company had acted unreasonably in failing to settle the third party's claim. *Id.* at 140. In addressing that allegation, the Utah Court of Appeals commented in dicta that the claim hadn't accrued until there was a final disposition of the third party's claim against the insured. *Id.* at 140 n.20 And "[d]icta . . . in analogous state court decisions are persuasive and entitled to consideration by this court." *Aurora v. Bechtel Corp.*, 599 F.2d 382, 386 (10th Cir. 1979).

This dicta follows "[t]he majority rule of courts in other states," which recognizes accrual of a "bad faith failure to settle claim . . . when

the excess judgment becomes final and non-appealable." *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1276 (Del. 2016); *see Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192, 1202 (10th Cir. 1982) (stating that under New Mexico law, the cause of action for an insurer's bad faith didn't accrue until the judgment became final); *Larraburu Bros., Inc. v. Royal Indem. Co.*, 604 F.2d 1208, 1215 (9th Cir. 1979) (stating that under California law, a colorable claim arises only when the disposition of a third party's claim becomes final); *Evans v. Mut. Assurance, Inc.*, 727 So. 2d 66, 67 (Ala. 1999) (stating that a cause of action arising out of a failure to settle a third-party claim does not accrue until the claimant obtains a judgment exceeding the policy limits); *Jarvis v. Farmers Ins. Exch.*, 948 P.2d 898, 902 (Wyo. 1997) ("A cause of action by an insured against the insurer for a failure, in bad faith, to settle a claim will not accrue prior to the entry of a judgment against the insured in excess of policy limits."); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 913 P.2d 1092, 1097 (Ariz. 1996) ("hold[ing] that a third-party bad faith failure-to-settle claim accrues at the time the underlying action becomes final and non-appealable"). The majority view provides additional evidence that the Utah Supreme Court would follow the *Campbell* dicta. *See Anschutz Land & Livestock Co. v. Union Pac. RR Co.*, 820 F.2d 338, 344 (10th Cir. 1987) (predicting that the Utah Supreme Court would follow the majority rule).

18

The majority view matches the position of "[l]eading insurance law treatises." *Connelly*, 135 A.3d at 1276–77; *see, e.g.*, Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 236:103 (3d ed. 2000) ("An action against an insurer for failure to settle a claim does not accrue and the statute of limitations does not begin to run until the judgment against the insured is final."); 12 *New Appleman on Insurance* § 150.04[4], at 150–22 (Jeffrey E. Thomas ed.-in-chief 2023) ("With respect to third-party claims, a claim for breach of the duty to settle or indemnify accrues upon the date the judgment was entered against the policyholder or the date the policyholder settled with injured party."); Allan D. Windt, *Insurance Claims & Disputes* § 9:2 (6th ed. 2013) (stating that a cause of action for breach of a duty to settle should accrue upon entry of an excess judgment or settlement above the policy limit). These treatises provide further reason to expect the Utah Supreme Court to follow the *Campbell* dicta. *See United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004) (stating that we can consider treatises when predicting how the state supreme court would decide an issue).

The excess judgment for Mr. Jenkins became final in 2018, which fell within the four-year period of limitations.



So the district court should have denied summary judgment to Prime on the bad-faith claim.

### CLJ's Claims Against Mr. McBride

CLJ sued not only Prime but also Mr. McBride, claiming legal malpractice and breach of fiduciary duty. The district court dismissed these claims, and we conduct de novo review based on the standard applicable in district court. *See* CLJ's Claims Against Prime–Part I(A).[7]

The district court applied Georgia law and a four-year period of limitations, and CLJ doesn't question these parts of the ruling. CLJ instead argues that the district court erred in pinpointing when the claim had accrued.

CLJ waited until 2020 to sue Mr. McBride. So the question is whether CLJ's claims against Mr. McBride had accrued before 2016. Under Georgia law, the claims accrued when the attorney allegedly breached a

---

[7]    The federal district court in Georgia dismissed these claims. When the case was transferred, however, the federal district court in Utah adopted these rulings. *See* p. 22 n.8, below.

duty toward the client—not "when the extent of the resulting injury [was] ascertained." *Jankowski v. Taylor, Bishop & Lee*, 269 S.E.2d 871, 874 (Ga. Ct. App. 1980). So when did Mr. McBride allegedly breach a duty to CLJ?

In the complaint, CLJ alleged that Mr. McBride

- had inaccurately said in 2013 that the policy limit was $50,000 and

- had withdrawn in 2014 from representing CLJ.

So if Mr. McBride had breached a duty to CLJ, the breach would have taken place by 2014 (when he withdrew from representing CLJ).

CLJ argues that it didn't incur any damage until 2018 (when Mr. Jenkins obtained a judgment against CLJ for $60 million). But under Georgia law, the malpractice claim accrued when Mr. McBride breached a duty to the client. *See* p. 20, above. That breach took place when Mr. McBride allegedly misrepresented the policy limit and withdrew as CLJ's counsel.

CLJ points to a footnote in *Geico Indemnity Company v. Whiteside*, 857 S.E.2d 654 (Ga. 2021). This footnote cites four cases in other states that appear to base accrual on the entry of a judgment against the insured in excess of the policy limit. *Id.* at 360 n.22. But these cases address liability of the insurer, not the insured's own attorney. *See* CLJ's Claims Against Prime–Part II(B), above.

Regardless of when Mr. Jenkins had obtained the excess judgment, CLJ alleges that Mr. McBride breached his fiduciary duty by misrepresenting the policy limit and withdrawing as counsel. Given these allegations, CLJ doesn't explain how the claims against Mr. McBride could have accrued after he had withdrawn in 2014.

### CLJ's Claim Against Evolution Insurance

CLJ also sued Evolution Insurance for violating Georgia law. The Utah federal district dismissed this claim based on a failure to adequately brief the availability of a cause of action.[8]

In district court, CLJ didn't deny that it had failed to adequately brief the issue. So CLJ forfeited this challenge. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). We could ordinarily consider forfeited challenges under the plain-error standard. *See id.* But CLJ hasn't requested review under the plain-error standard. The failure to

---

[8]    The Utah federal district court readdressed the issue after transfer of the case from the Georgia federal district court. Before the transfer, the Georgia court had dismissed this claim based on CLJ's failure to adequately brief the existence of a private cause of action. Upon transfer, CLJ sought reconsideration of this ruling. The Utah federal district court denied the motion to reconsider. In denying the motion, the court

- adopted the Georgia district court's ruling on the failure to adequately brief the availability of a cause of action and

- stated that it was dismissing the claims against Mr. McBride and Evolution Insurance.

*See* p. 20 n.7, above.

22

request plain-error review constitutes a waiver of CLJ's appellate argument. *See McKissick v. Yuen*, 618 F.3d 1177, 1189–90 (10th Cir. 2010). Given this waiver, we uphold the dismissal of the claim against Evolution Insurance.

## Conclusion

The federal district court erred in granting summary judgment to Prime on the bad-faith claim. So we remand for the district court to further address the bad-faith claim.

But on remand, the district court need not revisit its rulings on the amount of the policy limit, Mr. McBride's right to dismissal, or CLJ's waiver of its argument for a private right of action against Evolution Insurance.

Entered for the Court

Robert E. Bacharach
Circuit Judge

23